Cameron M. Hall; AZ Bar No. 025177
**THE LAW FIRM OF CAMERON HALL
& ASSOCIATES, LLC**
11811 N. Tatum Blvd.
Suite 3031
Phoenix, AZ 85028
Tel: 602.639.4839
Fax: 602.513.7449
Cameron@Hall*Law*.com
Docketing@Hall*Law*.com

*Attorney for Plaintiff*
Tracy Rexroat

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Tracy Rexroat**, an Arizona Resident, <br><br> Plaintiff, <br><br> v. <br><br> **Arizona Department of Education**; and**, State of Arizona, State Board of Education,** <br><br> Defendants. | **Case No.** <br><br> **VERIFIED COMPLAINT** <br><br> **(Jury Trial Requested)** |

Plaintiff Tracy Rexroat hereby complains and alleges against the above-named Defendants as follows:

### I.   PARTIES, VENUE, and JURISDICTION

1.   Plaintiff Tracy Rexroat ("**Plaintiff** ") is an individual, who at all times relevant hereto, was and is a resident of Maricopa County, State of Arizona.

2.   Defendant Arizona Department of Education ("**ADE**") is an administrative agency created pursuant to A.R.S. § 15-231(A), with authority and responsibility for overseeing and regulating the public school system.

Page **1** of **16**

3.  Defendant State Board of Education ("**SBE**") is the governing body for defendant ADE, as prescribed by A.R.S. § 15-231(B)(1) and Ariz. Const. Art. XI § 2.

4.  Under the provisions of the Arizona Education Act, A.R.S. § 15-203(B)(2), SBE may sue and be sued.

5.  Defendants ADE and SBE, individually and severally, are alleged to have committed acts/or omissions causing damages and harm to Plaintiff in violation of statutes and under theories sounding in both contract and in tort, all as further described *infra*.

6.  Based upon, *inter alia*, such joint and several liability and Defendants' common course of action, ADE and SBE will be jointly referred to as "Defendants" throughout the remainder of this Complaint, except where a particular Defendant is intended.

7.  At all times material to this Complaint, Plaintiff was employed by Defendant ADE. All of Plaintiff's employment activities were conducted within Maricopa County, Arizona.

8.  Venue is proper under 28 U.S.C.A. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as the unlawful employment practice of which Plaintiff is complaining was committed in Maricopa County in the State of Arizona.

9.  Plaintiff alleges that Defendants have caused damages and injury to Plaintiff in an amount exceeding $75,000. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. This civil action arises under the laws of the United States. More specifically, this action is brought pursuant to, *inter alia*, Title VII of the Civil Rights Act

of 1964, as amended (42 U.S.C. § 2000e *et seq*.), and the jurisdiction of this Court is invoked to secure protection and redress for deprivation of rights guaranteed by federal and state law, which rights provide for injunctive and other relief for illegal discrimination in employment. This court has jurisdiction pursuant to 42 U.S.C.A. § 2000e-5(f)(3) and 28 U.S.C.A. §§ 1331 and 1343(4).

11. This Court has general *in personam* jurisdiction over resident Defendants. The Arizona State Board of Education exists pursuant to statutory authority provided by the Legislature of the State of Arizona.

12. This action is brought pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 ("**Title VII**"), as amended, 42 U.S.C. §2000e *et seq*., and the jurisdiction of this Court is invoked to secure protection and redress for deprivation of rights guaranteed by federal and state law, which rights provide for injunctive and other relief for illegal discrimination and disparate treatment in employment.

## II.   PROCEDURAL COMPLIANCE

13. On or about October 29, 2010 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**"), as well as with the Arizona Civil Rights Division ("**ACRD**"), thereby satisfying the requirements of 42 U.S.C.A. § 2000e-5(b), (e).

14. Such charge was filed within one hundred and eighty (180) days of the unlawful employment practices about which she complained.

15. On or about February 17, 2011, the EEOC issued to Plaintiff a Notice of Right to Sue with respect to such charge of discrimination.

16. This Complaint has been filed within ninety (90) days of that date.

17. Plaintiff's Charge of Discrimination was filed timely.

18. That Charge alleges that Plaintiff was paid a lower salary on the basis of her gender.

19. Such conduct constitutes a violation of Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e *et seq.*, as amended ("**Title VII**") and violation of Equal Pay Act of 1963, as amended ("**EPA**"), against the Defendants.

20. The ADE and SBE are both subject to the EPA and to Title VII.

21. To the extent such remedies existed and were available, Plaintiff has properly exhausted her administrative remedies.

### III. GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

22. In early 2007, Plaintiff applied to be an Education Program Specialist in the Career and Technical Education ("**CTE**") section of the ADE.

23. Plaintiff was qualified for that position.

24. On May 15, 2007 Plaintiff was granted an interview.

25. Jason Wojcik ("**Jason**") interviewed for the same position, and the same time as Plaintiff.

26. Plaintiff, Jason, and another candidate all interviewed for the position.

27. The ADE judged and scored all interviewees.

28. Plaintiff received the highest such score of all interviewees.

29. As between Jason, Plaintiff and the third candidate, Plaintiff clearly possessed superior educational qualifications and experience.

30. As a result, on May 23, 2007, Ms. Jan Brite ("**Brite**"), Director of Career Pathway, wrote a recommendation memorandum to Tom Horne, Superintendent of Public Instruction, recommending that the ADE hire Plaintiff "an entrance salary rate of $43,000, *which is in alignment with current salaries of the program State Supervisors*." (emphasis added). (Attached hereto as "Exhibit A").

31. Relying upon Brite's recommendation memorandum, Plaintiff moved herself cross-country in order to accept the position she earned at ADE.

32. Plaintiff's starting salary with the ADE was $43,000.

33. Only later did Plaintiff discover that the ADE paid women less than males for performing work requiring equal skill, effort and responsibility in its performance.

34. In fact, as of May 23, 2007, male program State Supervisors were not being paid starting salaries of $43,000.

35. The ADE paid or pays women less for performing work under conditions similar to those of the men.

36. The following women work or worked in the same establishment as Plaintiff: Shea Padilla, Stephanie Hahn and Ruth Kerr.

37. The following women perform or performed jobs similar to that of Plaintiff: Shea Padilla, Stephanie Hahn and Ruth Kerr.

38. Plaintiff is or was similarly situated to, *inter alia*, the following women : Shea Padilla, Stephanie Hahn and Ruth Kerr

39. The following men work or worked in the same establishment as Plaintiff: Jason Wojcik and Jimmy Wojcik.

40. The following men perform or perform or performed jobs similar to that of Plaintiff: Jason Wojcik and Jimmy Wojcik.

41. Plaintiff is or was similarly situated to, *inter alia*, the following men: Jason Wojcik and Jimmy Wojcik

42. Women working in the same establishment as Plaintiff, such as Shea Padilla, Stephanie Hahn and Ruth Kerr, were paid approximately $43,000 for performing jobs similar to that of Plaintiff.

43. Men working in the same establishment as Plaintiff, such as Jason Wojcik and Jimmy Wojcik, were paid more than approximately $60,000 for performing jobs similar to that of Plaintiff.

44. Men at the ADE were treated more favorably than similarly situated women at the ADE.

45. Plaintiff reported to Human Resources that women were being paid less by ADE as a result of gender-based discrimination.

46. After Plaintiff made that report, Human Resources told her that the amount of a candidate's immediately preceding salary is what determined the starting salary paid by ADE.

47. Human Resources claimed that if any gender-based wage differential existed, it was caused by the immediate past salaries of newly hired men vs. such salaries of newly hired women.

48. Plaintiff continued reporting to Human Resources that women were being paid less by ADE as a result of gender-based discrimination.

49. Plaintiff made such reports to Human Resource officers, such as Debbie Jackson ("**Jackson**"); Barbara Border ("**Border**"), Deputy Director of Certified Teacher Education; and, Brite.

50. Following Plaintiff's report(s) to her, Border stated that the ADE's budget precluded any pay raises.

51. Border also stated that if the ADE had any gender-based salary disparities, it was the result of candidate's salary history.

52. Following Plaintiff's report(s) to Brite and Jackson, they both stated that under ADE Guidelines, prior salary history helped determine the starting salary of a new hire.

53. ADE personnel are not supposed to violate the Department's "Policy and Procedures – Personnel Requisitions and Hiring" (the "**Policy**"). (Attached hereto as "Exhibit B").

54. ADE personnel are required to follow the Policy.

55. Section II(F) of the Policy states that "[t]he justification for the recommendation [of salary] should include salary history, experience and education."

56. Section II (F) requires new hires to satisfy five specific factors before the ADE can offer to pay such individual a "special entrance rate."

57. Receiving a "special entrance rate" means that the new hire receives a higher starting salary.

58. The ADE bases future raises, and bonuses, upon an employee's starting salary.

59. When comparing two similar employees (hired into equivalent positions and under equivalent circumstances), in almost every case, the employee with a higher starting salary will continue making more money than their comparator through the employees' time at ADE.

60. Thus, those who start off making more money, are the most likely to end their careers making more money.

61. Under Section II(F) of the Policy, the ADE cannot offer a "special entrance rate" to anyone unless and until it analyzes that individual's (i) education, (ii) earning history, and (iii) position-specific abilities, as well as whether the candidate has any experience of an unusual and outstanding character.

62. The Policy furthermore obligates the ADE to review the (iv) availability of qualified applicants, and (v) the position's geographical location before offering any "special entrance rate" to a candidate (the aforementioned factors are hereinafter referred to collectively as the "**Factors**").

63. Both Jason Wojcik ("**Jason**") and Jimmy Wojcik ("**Jimmy**") received a "special entrance rate" when they were hired by the ADE.

64. The ADE did not specifically review the Factors before offering "a special entrance rate" to Jason.

65. The ADE did not specifically review the Factors before offering "a special entrance rate" to Jimmy.

66. Under the Factors established by Section II(F) of the Policy, Jason was not eligible for "a special entrance rate".

67. Under the Factors established by Section II(F) of the Policy, Jimmy was not eligible for "a special entrance rate".

68. Giving Jason "a special entrance rate" violated Section II(F) of the Policy.

69. Giving Jimmy "a special entrance rate" violated Section II(F) of the Policy.

70. Shea Padilla, Stephanie Hahn, Tracy Rexroat, Ruth Kerr, Jason Wojcik and Jimmy Wojcik were all hired under the same job description

71. Shea Padilla, Stephanie Hahn, Tracy Rexroat, Ruth Kerr, Jason Wojcik and Jimmy Wojcik all perform similar job duties.

72. Shea Padilla, Stephanie Hahn, Tracy Rexroat, Ruth Kerr, Jason Wojcik and Jimmy Wojcik all perform jobs requiring equal skill, effort and responsibility.

73. ADE paid the following salaries as of approximately July 2008:

| Name | Salary | Gender |
| --- | --- | --- |
| Shea Padilla | $39,983 | Female |
| Stephanie Hahn | $43,000 | Female |
| Tracy Rexroat | $43,000 | Female |
| Ruth Kerr | $44,290 | Female |
| Jason Wojcik | $58,500 | Male |
| Jimmy Wojcik | $60,000 | Male |

74. None of the four females referenced above were offered "a special entrance rate" by ADE.

75. The two men in the chart were paid more than each and every one of the four women.

76. The men received that higher pay despite the fact that the women have objectively superior qualifications and experience.

77. Three of the four females mentioned above had a Master's Degree when hired by ADE, and the fourth female has 30 years of experience in her field, plus a Bachelor's Degree.

78. Jimmy had little to no experience directly related to his position when he was hired by the ADE.

79. Jason did not have a Master's Degree when he was hired by ADE.

80. ADE personnel, such as Border, attempted to explain their discriminatory treatment away by blaming any salary gaps on "the budget."

81. Gender-based pay differentials cannot be explained by "the budget."

82. To the contrary, the Policy states that a "special entrance rate request may be denied due to the budgetary and fiscal constraints it would place on the agency."

83. There is no rational, non-discriminatory, non-pretextual basis upon which ADE could have decided to pay females less due to "the budget" – yet found money to increase the starting salaries of males from that same budget.

84. In its "Position Statement and Response" to the EEOC charge, ADE admitted that the under the Policy, it considers "salary history, experience, and education" in making an initial salary determination. (Attached hereto as "Exhibit C").

85. Defendants have stated that Jimmy's starting salary was increased to $60,000 because he made $80,000 at his last job.

86. Defendants have stated that Jason's starting salary was increased to $60,000 because he made $90,000 at his last job.

87. Defendants made little to no efforts to verify the prior salary claims of Jimmy or Jason.

88. Defendants did not consider the salary history of female hires, or else applied different standards when doing so.

89. In the alternative, to the extent the gender-based salary gap is actually caused by Defendants' Policy of taking into account past earnings, the Policy itself is in violation of Title VII for, *inter alia*, having a disparate impact.

90. Plaintiff's gender was a sole and/or motivating factor in Defendant's above-described conduct.

91. Defendant's above-described conduct removed and/or substantially interfered with work facilities important to the performance of Plaintiff's job duties.

92. Defendant's above-described conduct has had a deleterious effect on the terms, conditions and privileges of Plaintiff's employment.

## COUNT I
## TITLE VII
### (Gender-Based Discrimination)

93. Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

94. Defendants discriminated against Plaintiff in violation of Title VII and the ACRA.

95. Plaintiff has been discriminated against on the basis of gender, which is female.

96. Plaintiff is qualified for her job and satisfies all normal job requirements.

97. Plaintiff has significant relevant experience, appropriate educational qualifications, and has served the Defendants for three years, in which she had no employment disciplinary actions.

98. Plaintiff was subjected to an adverse employment action.

99. Similarly situated males were treated more favorably.

100. Defendants committed the acts described in this Complaint oppressively, maliciously, and with an evil motive, entitling Plaintiff to an award of punitive damages in an amount appropriate to punish and make an example of Defendants.

101. Plaintiff is entitled to recover damages against Defendants, jointly and severally, for all harm caused by the unlawful practices and discrimination, including award of backpay, frontpay, liquidated damages, interest, reasonable attorney's fees and the costs of this action, together with such other and further relief as may be just and equitable under the law.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

**COUNT II**
**TITLE VII**
**(DISCRIMINATORY PAY &**
**DISPARATE TREATMENT)**

102. Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

103. Defendants discriminated against Plaintiff by, *inter alia*, treating her differently from, and less favorably than, similarly situated males, and by subjecting her to discriminatory pay.

104. Defendants discriminated against Plaintiff by, *inter alia*, providing her with lower pay than similarly situated male employees on the basis of her gender. This has been done despite the fact that Plaintiff, and all other female employees similarly situated, performed duties requiring the same skill, effort, and responsibility as the duties of the male employees.

105. The Defendants' policies, practices and/or procedures have produced a disparate impact on the Plaintiff with respect to the terms and conditions of her employment.

106. The Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of the Plaintiff.

107. Because of the continuous and persistent nature of Defendants' discriminatory conduct throughout the employment of the Plaintiff, the continuing violation doctrine applies to all of the violations alleged herein.

108. As a result of Defendants' conduct, as alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss.

109. By reason of Defendants' malfeasance, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

110. Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

## COUNT III
## EQUAL PAY ACT

111.  Plaintiff reasserts and realleges each and every paragraph in this Verified Complaint as if fully restated herein.

112.  Defendants are each an "employer" of Plaintiff within the meaning of the Equal Pay Act, and have discriminated against Plaintiff by providing her with lower pay than similarly situated male employees.

113.  Plaintiff's gender was the sole and/or a motivating factor in Defendants' discriminatory denial of equal pay.

114.  Plaintiff and all other female similarly situated employees performed duties requiring the same skill, effort, and responsibility as the duties of the male employees.

115.  The pay differential between the male and female employees was not due to experience, qualification, seniority, merit, quantity or quality of work, but due to gender.

116.  Defendants caused, attempted to cause, and are contributing to the continuation of pay discrimination based on gender, in violation of EPA.

117.  Defendants knew or should have known, or showed reckless disregard for, the fact that their conduct was in violation of the EPA.

118.  As a direct and proximate result of Defendants' actions, Plaintiff suffered injury and monetary damages, including but not limited to past and future loss of income, benefits, expenses, and costs — and is entitled to all available legal and equitable

remedies, including recovery of attorneys' fees and costs, the precise amount of which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

## IV. **JURY DEMAND**

119.     Plaintiff hereby demands a trial by jury of all issues so triable under federal or state law.

## V. **CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this honorable Court advance this case on the docket, order a trial at the earliest practical date, and upon such hearing:

A.  Issue an order awarding Plaintiff all direct and consequential damages, including but not limited to backpay, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the violations of ACRA, Title VII and EPA, all as the harm more particularly described *supra*;

B.  Award damages including general and special damages for Defendants' tortious conduct as alleged herein and proved at trial;

C.  Award Plaintiff the costs of this action, including reasonable attorney's fees and costs;

D.  Award Plaintiff reasonable pre-judgment and post-judgment interest in the maximum amount allowed by law; and

E.  Grant or award Plaintiff with such other legal and equitable relief as this

1 Court deems just and proper.

RESPECTFULLY SUBMITTED this 23rd day of May, 2011.

**THE LAW FIRM OF CAMERON HALL & ASSOCIATES, LLC**

/s/ Cameron Hall
Cameron Hall, Esq.
11811 N. Tatum Blvd.
Phoenix, AZ 85028
*Attorney for Plaintiff*
Tracy Rexroat

## VERIFICATION

Plaintiff Tracy Rexroat declares under penalty of perjury that she has read the foregoing *Verified Complaint* and is familiar with the contents thereof. The matters asserted therein are based on her own personal knowledge, except as to those matters stated upon information and belief, and as to those matters, she believes them to be true.

Dated this 23rd day of May, 2011.

_____
Tracy Rexroat
Plaintiff