UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Tracy Rexroat, | ) | |
| | ) | No. **CV 11-1028-PHX-PGR** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 21, 2011 |
| **Arizona Department of** | ) | 11:06 a.m. |
| **Education,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE PAUL G. ROSENBLATT, JUDGE

<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>

<u>SCHEDULING CONFERENCE</u>

**APPEARANCES:**
For the Plaintiff:
        Hall & Chelle
        By:  **Cameron Matthew Hall,** Esq.
        7077 East Marilyn Road, Suite 140
        Scottsdale, Arizona 85254

For the Defendant:
        Office of the Attorney General
        By:  **Rachel M. Bacalzo,** Esq.
        1275 West Washington Street
        Phoenix, Arizona 85007

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
1                    (Proceedings begin at 11:06 a.m.)

2              THE CLERK:  This is civil matter 11-1028, Tracy

3     Rexroat versus Arizona Department of Education, on for

4     scheduling conference.

5              Counsel please announce.                              11:07:07

6              MR. HALL:  Cameron Hall for plaintiff Tracy Rexroat.

7              MS. BACALZO:  Good morning, Your Honor, Rachel Bacalzo

8     with the Arizona Attorney General's Office for the defendant.

9              THE COURT:  Well, good morning, Counsel.

10             What gave you the idea, Mr. Hall, that this had been    11:07:20

11    vacated?

12             MR. HALL:  Your Honor, my ex-paralegal informed me

13    that it had been rescheduled.  I'm going to be out of town

14    again tomorrow to visit my brother --

15             THE COURT:  Would you step up, please?                 11:07:35

16             MR. HALL:  Yes.

17             THE COURT:  I can't hear you.

18             MR. HALL:  Sorry.

19             My paralegal, who I've since let go, informed me that

20    it was rescheduled.                                            11:07:42

21             THE COURT:  Well, you have a time problem in many

22    respects, Mr. Hall.  First of all, this was not vacated.

23             And secondly, you did not provide your contribution to

24    the joint case management report, so the Court doesn't have any

25    idea as to what your Complaint alleges.                        11:08:00
```

UNITED STATES DISTRICT COURT

1          And we have the substantial issue as to whether or not

2    there's a time bar to the Title VII action as well.

3          Would you step us, please, Counsel?

4          MS. BACALZO:  Yes.

5          THE COURT:  Let's set the record a bit here.  On May          11:08:20

6    24th, 2011, the plaintiff filed a Complaint alleging gender

7    discrimination, in violation of Title VII and the Equal Pay

8    Act.  Defendants filed an Answer on July 8th of 2011.

9          On August 9, 2011, the defendants filed a motion for

10   partial judgment on the pleadings.  And the plaintiff filed her   11:08:39

11   response on September 26th.

12         On September 27th the plaintiff filed a motion to

13   correct the docket.  Defendants filed a response on October 14.

14         The defendants filed a joint case management report on

15   October 3rd, 2011, without the participation of the plaintiff.    11:08:58

16   And on October 11th the Court granted plaintiff's motion to

17   continue the scheduling conference to this date.

18         Have you done any discovery at all, Mr. Hall?

19         MR. HALL:  Your Honor, I've drafted discovery requests

20   which, again, I understood had been sent out.  But I've           11:09:32

21   discovered since letting the individual go that a lot of what I

22   was told did not occur.  So I've not been able to --

23         THE COURT:  Well, the order setting this conference,

24   the original order, tells you to get right on with the

25   discovery.                                                        11:09:47

1        MR. HALL:  Yes, Your Honor, and I've drafted

2   discovery.  I can e-mail it today.

3        THE COURT:  Well, if it's drafted, it's --

4        MR. HALL:  I understand.  Your Honor, I'm not saying

5   it's an excuse, I was just explaining.                    11:09:57

6        THE COURT:  Well, how do we deal with this?  I mean, I

7   don't even know, based on your failure to participate in the

8   joint case management report -- sounds like the defendant has

9   pretty good rationale that these people are not all the same,

10  that they have different qualifications, and that there may not   11:10:13

11  be anything other here than a complaint for a failure to get a

12  raise, which isn't going to go anywhere.

13       MR. HALL:  And we have responses to that, Your Honor.

14  And, of course, it would have been in the joint case management

15  report.                                                   11:10:30

16       THE COURT:  And it's pretty clear that you can't sue

17  the Department of Education.  Have you ever filed a Complaint

18  against the State of Arizona or any of its employees in the

19  past?

20       MR. HALL:  Yes, Your Honor.                          11:10:39

21       THE COURT:  And you sued the State of Arizona; right?

22       MR. HALL:  Yes.  That's -- yes.

23       THE COURT:  So is there really an issue here?

24       I mean, there's a substantial issue as to whether or

25  not this is time barred.  Do we consider -- do you want to   11:10:55

1    argue those motions and proceed with that first?  Because there

2    may not be anything left of this case, I don't know.

3            MR. HALL:  Your Honor, I believe, as we argued in

4    the -- in our response and motion to correct, that even if the

5    Title VII case claims were dismissed, there's still the EPA          11:11:16

6    claims, which would have been timely.  And I believe that the

7    State conceded that and did not file to dismiss on those

8    claims.

9            THE COURT:  Government's position?

10           MS. BACALZO:  That is true that --                           11:11:32

11           THE COURT:  Pull the mic over.

12           MS. BACALZO:  That is true, Your Honor.  Even if the

13   Court were to grant our motion, there would be a remaining

14   Equal Pay Act claim.  The plaintiff stipulated to the dismissal

15   of the Arizona Civil Rights Act claim, so that would be all        11:11:46

16   that was left.

17           And that was in the briefings on our motion for

18   judgment on the pleadings.  So the Complaint, if our motion was

19   granted, would proceed only on the EPA.

20           THE COURT:  Well, tell me what the issue is concerning     11:12:05

21   the native format on disk issue.  You're talking to an old-time

22   judge here.  What does that mean?

23           MS. BACALZO:  I had to -- I'm familiar with the issue,

24   generally.  I've been using electronic discovery for years, but

25   I also had to educate myself a little bit more.                    11:12:30

UNITED STATES DISTRICT COURT

1          Mr. Hall had asked for everything to be produced in

2    native format.  And that's the format that the computer stores

3    it, as the software does.  When you print a document -- I

4    actually brought a sample for you to see, and maybe to help

5    understand our objection to producing everything in native          11:12:51

6    format.

7          We have a position description -- would Your Honor

8    like to see this --

9          THE COURT:  Yes.

10         MS. BACALZO:  -- so I can explain?                              11:13:01

11         I actually have two documents.

12         Your Honor, there's a position description

13    questionnaire, which we call the PDQ at the State of Arizona,

14    and it describes the position.

15         Now the second document that looks like a snapshot of         11:13:27

16    a computer screen is the only additional information that will

17    come if it's produced in native format.  The Department of

18    Education doesn't store historical data on a document.  So if

19    this document had been created five years ago and edited once

20    each year, this snapshot shows that that -- all those edits        11:13:48

21    made over those five years is not retained.

22         The only thing this shows is, when you go in

23    electronically and look at this document to print it, is who

24    last accessed the document.  This information is not relevant

25    to this lawsuit.                                                    11:14:11

1       Now the additional problem, as you can imagine with a

2  job search, you've got a file.  And the way the State handles

3  applications is they come in electronically through the

4  Department of Administration.  And then once the job posting is

5  closed, those applications are printed or there's a cut-off.      11:14:29

6  Let's say there's 100 applications, they don't have the time to

7  look at all 100, so they might cut it off at 25.

8       Producing that in native format is beyond our ability

9  because it's stored on a different site.  I know it's all part

10 of the State, but I don't know if that's even possible.  I       11:14:47

11 mean, how would you get a native format of somebody's resume?

12 I mean, it's submitted by someone.

13      So we have these files, these resumes, this position

14 description, oh, the interview process.  We have handwritten

15 documents.  That's not available electronically.  We have this   11:15:05

16 entire file.

17      So what Mr. Hall is asking us to do is take each of

18 those documents in each job search file and go in and look

19 electronically for the information and produce, for example,

20 this for every one of those pages.                               11:15:21

21      I had our IT staff at the Department of Education do a

22 test of four documents.  Some could not be found

23 electronically.  And that included e-mails.  It was a fair

24 sampling of what might exist in terms of documents that would

25 be produced.  Some couldn't be found, some could be found.       11:15:41

1    And my understanding is the issue of whether you

2    hard print the document and produce it or produce this in

3    native format is not the cumbersome part.  The cumbersome

4    part is finding this electronically to the extent it exists.

5    And let's say a job search file has 100 documents,                    11:16:04

6    they estimated it would take about 15 minutes per document to

7    find.  It's just completely overburdensome for the State to do

8    that.  We don't have the resources.

9    And furthermore, this is -- this additional

10   information is not relevant to this case.  This is a                  11:16:20

11   straightforward salary case.

12   Now I invited Mr. Hall by letter to let me know if

13   there were specific pieces of information that he would like

14   produced in this native format, then we'll go and look at that.

15   But the request was, I want everything in native format.  And      11:16:38

16   to that we said no and gave some reasons for that.  I did not

17   hear back in response to my letter.

18   But I have spent quite a bit of time, not only

19   researching, but meeting with EDA personnel, including the

20   information technologies staff, who have informed me that they      11:16:57

21   don't store electronically all of the history on a document.

22   But if there's a category of documents that we can talk about

23   and establish some relevance to the additional information that

24   might be available, then we can do that.  But going into the

25   payroll records -- I mean, you print out a salary history,          11:17:21

1    there's no native format to that.  It really more comes up with

2    these types of word documents.

3         So it's very, very expensive in terms of time.  They

4    don't have the staff to do that, I've confirmed that, to be

5    able to look through each file.                        11:17:42

6         THE COURT:  Okay.  Thank you.

7         Mr. Hall.

8         MR. HALL:  Yes, Your Honor.  I believe that initially

9    I need to clarify what the request was.  I did not request that

10   everything be produced only in native format.  The request was   11:17:54

11   by default documents will be produced in their native format.

12   And I believe, Your Honor, that that's actually -- that's

13   what's required under the rules.  In Rule 34(b)(2) it says,

14   quote, if a request does not specify the form or forms for

15   producing electronically stored information, a responding party   11:18:12

16   must produce the information in a form or forms in which it is

17   ordinarily maintained, or in a form or forms that are

18   reasonably usable.

19        THE COURT:  Or come to court.

20        MR. HALL:  Yes, Your Honor.                        11:18:29

21        The example given by opposing counsel I think is an

22   instructive one, that she said, well, it's not relevant who the

23   last person that accessed a document is.  In fact, that could

24   be very relevant.  If somebody disclaims knowledge of a

25   document, and we are, by looking at the native format, able to   11:18:44

1  tell that they, in fact, accessed it, then that would go

2  directly to their knowledge of that document.

3        THE COURT:  But you have to know what that document is

4  to find lack of knowledge to ask a question about that.

5        MR. HALL:  Yes, Your Honor.  And what we're seeking is    11:19:01

6  really just pretty basic stuff, as far as electronic discovery

7  goes.  It's not that we're asking them to do anything that's

8  overly burdensome.  In fact, under the rules if it were overly

9  burdensome, that would be their response.  If they said, you've

10 asked for ESI, that just will cost too much money, then they    11:19:20

11 need to state specifically what they did to investigate it,

12 specifically what the cost is, and what makes it overly

13 burdensome.

14        We, in fact, are just looking for key word searches.

15 We're looking for things that will allow us to engage in    11:19:35

16 discovery as efficiently as possible.  Producing ESI should

17 actually be less expensive.  In fact, all we're asking is not

18 that documents that are electronic be taken and converted,

19 printed out into paper, so they can be sent to us to be scanned

20 back in, as with most firms, and then reviewed in electronic    11:19:53

21 format.  They're in electronic format.  Copy them onto a disk

22 and provide it in that format.

23        I don't see that that is any more burdensome in

24 conducting word searches, looking through the electronic

25 files.    11:20:11

1    THE COURT:  You just heard the inquiry she made and

2    the responses she got in making those inquiries.

3    MR. HALL:  Your Honor, I do believe that under the

4    rules the argument that a specific request or set of requests

5    is overly burdensome has to be pled specifically.  And they          11:20:24

6    have to state exactly what that burden is and how much, so we

7    can have an opportunity to respond to it.  Just a

8    flat statement --

9    THE COURT:  But you're asking this Court in the joint

10   case management report, to the extent that you participated, to      11:20:39

11   enter an order on native form disk.  And the Court's not going

12   to do that or order that until such time as -- you're right,

13   they need to object to a question or an interrogatory and say,

14   this is too burdensome.  But if you're going to hear the same

15   thing that she's telling us, then we have to know, other than a      11:21:02

16   generic request for some type of native form discovery, what it

17   is that you want answers to.

18   MR. HALL:  And, Your Honor --

19   THE COURT:  If you provided your discovery that you've

20   drafted, then we would have a basis to finally resolve this.         11:21:20

21   But this Court's not going to enter any scheduling order

22   requiring the utilization of a process that this Court's never

23   heard of before this case.

24   Now maybe other judges have, maybe they're familiar

25   with this, but this Court isn't, and this is the Court that's        11:21:40

1   managing this litigation.

2          MR. HALL:  Yes, Your Honor.  And I understand what the

3   Court is saying.  And I suppose that's the ruling.

4          I just want to clarify that all we're asking is that

5   where there are two documents that are both reasonably                11:21:51

6   accessible, and it exists in electronic format, and the State

7   would want to print it out and provide it to us, that by

8   default it be provided in electronic format.  That's the

9   totality of what we were asking for.

10         But I understand Your Honor's reasoning.                        11:22:10

11         THE COURT:  Well, that seems to make a difference if

12  there's just one document that's in digital format and one that

13  isn't, that you give them the digital format.  Is

14  that as burdensome as --

15         MS. BACALZO:  I don't think that is a problem.  But            11:22:29

16  that was not the request that I received.  And I'm positive

17  about that.

18         In terms of the native format, the reason this is not

19  relevant is, the person who goes in electronically, that could

20  be my IT person at ADE, it could be my HR representative, I          11:22:42

21  don't know who that would be, it's that person's access that is

22  being reflected in the native format.  It's not the last person

23  before the person who's printing it out pursuant to a discovery

24  request.

25         But if it does -- if a document does appear that's           11:22:57

1    stored electronically, I don't think that will be a problem.

2    However, finding it is the problem if we also have a paper

3    copy.  We keep paper files of this information.  We don't

4    have the resources to store all of the job searches

5    electronically.                                                    11:23:19

6            Judge, I also want to make a comment about some

7    difficulties in producing information, specifically like word

8    documents, like this position description questionnaire I gave

9    you.  If -- well, this wouldn't have attorney/client

10   communications in it.  But documents have to be reviewed and    11:23:37

11   Bates labeled before they're produced, and that is a cumbersome

12   process.  There's no way to Bates label electronically every

13   document.  There are challenges with that information.  So it's

14   not easy necessarily to do.

15           And Mr. Hall represented that this was a less            11:23:55

16   expensive process.  It is not.  I'm familiar with another case

17   that he has against the State where the State agreed to produce

18   some electronically stored information, and the last word I

19   had, it was a $30,000 tab for the Arizona taxpayers.  It's not

20   cheap.                                                           11:24:13

21           But we will cooperate and participate with Mr. Hall to

22   the extent we can.  There's no reason not to.  But, again, that

23   was not the request I received.

24           And we'll continue to produce paper documents, either

25   that we're going to use -- we've disclosed some already with    11:24:27

1    our initial disclosure statement, and will continue to

2    supplement throughout discovery.

3         But I wanted you to know those additional points as

4    well was part of my objection.

5         THE COURT:  Tell me about the extended discovery          11:24:42

6    concerning interrogatories and subparts.

7         MS. BACALZO:  Well, Your Honor, I served discovery on

8    the plaintiff that is overdue.  I did serve those, let's see,

9    on September 16th.  And they were due October 19th.  And my

10   office received a request for an extension, which we agreed to.  11:25:11

11   And that deadline was November 3rd.

12        But mysteriously the original requests that were

13   mailed to the address on record for Mr. Hall, it came back.

14   And they came back in a strange way.  We did not mail them

15   folded like they would go into a standard envelope, and it had  11:25:31

16   a strange stamp on it.

17        But in any event, we made Mr. Hall aware of this and

18   re-served them on October 31st.  So whether he got them the

19   first time or didn't, he hasn't responded to that inquiry.  But

20   giving him every benefit of the doubt, those responses are due  11:25:47

21   December 5th, which is coming up.

22        I think that, in my experience, getting voluminous

23   discovery requests in a fairly straightforward case, it is in

24   our best interests to say, well, how can we limit this

25   discovery?  How can we limit the amount of information?         11:26:09

1          And we see this as a fairly straightforward matter.

2     And I would like to put some limits, reasonable limits on the

3     number of interrogatories, requests for admission and requests

4     for production.  And Mr. Hall said in our 26(f) conference that

5     he was not willing to do that.  I've made some proposals to                11:26:29

6     limit the amount of discovery so that it doesn't get

7     outrageously expensive for the State.  In my experience we get

8     up to 50, 60 requests per category.  And we're looking at

9     hundreds of requests for a straightforward wage salary case.

10    It doesn't seem to make sense.  So that was why I had asked for            11:26:46

11    that, some limits.

12          THE COURT:  Mr. Hall, response.

13          MR. HALL:  Yes, Your Honor.  I would have no objection

14    to what I understand are fairly standard limits of 40

15    interrogatories, RFPDs and RFAs.  I think that's fairly fitting           11:27:00

16    for most cases and should satisfy the requirements here as

17    well.

18          THE COURT:  So there's no issue here?

19          MR. HALL:  I have no objection to what I understand is

20    very standard limitation.  I've never known a case where there           11:27:16

21    was no limit whatsoever on discovery.

22          MS. BACALZO:  I have had the experience with other

23    judges in this court where they have imposed 40 -- a limit of

24    40 per category.  I've actually asked for less than that.  But

25    I don't know if there is a standard.  I have had many cases              11:27:38

1    where there has been -- and it actually works very well, it

2    forces the parties to work hard to serve legitimate requests

3    and not those that are overly burdensome.

4        THE COURT:  Well, here again, the Court's burdened

5    because there's no input from the plaintiff on the joint case    11:27:55

6    management report.  And I have little to go by.

7        What had you intended to provide as inserts?  Had you

8    met that request?

9        MR. HALL:  Your Honor, we provided for 40, 40, 40, in

10   discovery requests.    11:28:20

11       THE COURT:  No, no, I'm talking about your statement

12   of the case.

13       MR. HALL:  Oh, the statement of the case?

14       Your Honor, I believe that the assertion that it's

15   just a straightforward, you know, sour grapes over not    11:28:31

16   receiving a promotion or a pay raise is not accurate at all.

17   In fact, I think that the record will show that Miss Rexroat

18   was more highly qualified than a number of men who, in fact,

19   received higher pay raises, higher initial pay.

20       THE COURT:  For the same -- precisely the same    11:28:50

21   specialty?

22       MR. HALL:  I'm sure that there's going to be an issue

23   over definitions and what similarly situated is.

24       THE COURT:  But you agree that there could be

25   different qualifications and different salaries for the --    11:29:03

UNITED STATES DISTRICT COURT

1      MR. HALL:  I'm not disputing that there could, of

2  course, be different qualifications and different salaries, but

3  that's part of what the discovery process is for, is for us to

4  show that even in some case where the State might assert that

5  there's a difference, that, in fact, their job duties and                    11:29:19

6  responsibilities are the same, and it's simply a pretext for

7  the discriminatory pay structure.

8      THE COURT:  But you had to have known that before you

9  filed the Complaint based on some evidence that the plaintiff

10 was aware of.                                                                 11:29:34

11     MR. HALL:  Yes, Your Honor.  And I believe that some

12 of the evidence we provided in the Complaint is indicative of

13 that.  And that the -- there are several males who received a

14 higher initial pay, although they had no real job

15 qualifications, they didn't have the level of experience that   11:29:50

16 Miss Rexroat had in that specific area.

17     In fact, when they were looking at setting the initial

18 pay structure, there's a subjective component to it where they

19 look at what the prior pay was and what the competitiveness is.

20 And that's what they used to provide males with a higher        11:30:10

21 starting pay.

22     THE COURT:  When did your client first go to work for

23 the State of Arizona?

24     MR. HALL:  I don't know offhand, Your Honor.

25     THE COURT:  More or less.                                                 11:30:21

```
 1              MR. HALL:  I believe she's been there four years or
 2    so, four or five years.
 3              THE COURT:  I see.  So there should be no difference
 4    based on inflation for higher --
 5              MR. HALL:  No, Your Honor.                              11:30:36
 6              THE COURT:  -- qualified people.
 7              MR. HALL:  I believe all those things can be a
 8    legitimate explanation, but they can also be a pretext.  And if
 9    you look at all the different factors, and if -- individuals,
10    taking those things into account, there's still a gender        11:30:47
11    difference between starting pay.  That's rather significant,
12    because it's not just that gap that they start with, that gap,
13    that additional pay, follows them throughout their entire
14    career.
15              THE COURT:  I see.  Are you going to get those replies 11:31:02
16    and responses to the discovery requests in by the 5th?
17              MR. HALL:  Yes, Your Honor.
18              MS. BACALZO:  I'd also like --
19              THE COURT:  Because one of the important things that
20    you need to know, once this scheduling order is entered, you     11:31:12
21    cannot stipulate to extensions of time.  You need to come back
22    to the Court based on motion and good cause why these
23    scheduling time frames are not met.
24              MS. BACALZO:  Your Honor, I'd also like the initial
25    disclosure statement from Mr. Hall as well.  And I'm willing to  11:31:30
```

1    wait for it until December 5th.

2            THE COURT:  This has been around since May.

3            MR. HALL:  And again, Your Honor, I have it.  I don't

4    have a good reason why it wasn't served.  So I'll provide it

5    immediately.                                                    11:31:51

6            THE COURT:  Let me tell you about discovery disputes.

7    The Court prefers that if you have a discovery dispute -- now

8    maybe electronic discovery or these issues are different, but

9    if it takes place in the context of a deposition or in other

10   normal discovery contexts, I prefer that you pick up the         11:32:07

11   telephone and call the Court.  If I'm in chambers I'll take

12   that call directly.  If I'm in court I will take it at the

13   first recess.  And we can usually resolve disputes that are

14   generated in those contexts without the necessity of filing

15   motions for protection, motions to compel, et cetera.           11:32:28

16           Anything else?

17           MS. BACALZO:  Your Honor, on the issue of the

18   settlement, I had suggested an early settlement conference to

19   Mr. Hall, and he thought it was too early when we spoke on

20   September 15th.  We'd still like to have a settlement           11:32:57

21   conference set.

22           This case presents some unique challenges in that some

23   of the witnesses could be people that are working side by side

24   with Miss Rexroat.  It makes it uncomfortable, potentially

25   difficult.  So we're cognizant of that as an agency.  And we    11:33:18

UNITED STATES DISTRICT COURT

1  thought if we can meaningfully sit down and discuss resolution

2  it would be helpful.

3          THE COURT:  I hear you.  That's in everybody's best

4  interests.

5          Whenever you feel that you're ready for a judicial    11:33:31

6  officer to help in a settlement conference, all you need to do

7  is jointly notify the Court.  If you choose to go outside the

8  court for private mediation, as is often done in these cases,

9  bear in mind that you can do that any time you want, but it

10  will not interfere with the schedule that the Court enters.  It    11:33:50

11  has to be -- all those deadlines must be met.  And you'd have

12  to figure out a way to do that.

13          MS. BACALZO:  Would it be possible to set a magistrate

14  at this point in time, or does the request need to be jointly

15  made?                                                      11:34:05

16          THE COURT:  Well, whenever you're ready --

17          MR. HALL:  We're agreeable to that.

18          THE COURT:  Are you ready?

19          MR. HALL:  Yes, Your Honor.

20          THE COURT:  But you haven't done any discovery.  You    11:34:09

21  haven't even got the initial disclosures.

22          MR. HALL:  I believe -- in --

23          THE COURT:  How can you settle --

24          MS. BACALZO:  Well --

25          THE COURT:  -- if there's no basis to his claim?    11:34:17

1          MS. BACALZO:  I've done extensive fact investigation

2     with my client.  I know what the facts are.  I've disclosed a

3     lot of that information.  I think I know what I'm looking at,

4     at least initially to get together and try to reach some common

5     ground.  I presume -- if we were referred --                    11:34:32

6          THE COURT:  If you're agreeable to that, we can pull a

7     judge right now.  But that won't interfere with the scheduling

8     order that the Court's going to enter.

9          MS. BACALZO:  Understood.

10          Ideally it would be set next year, you know, so we      11:34:48

11     would --

12          THE COURT:  But see, the process there is that

13     judicial officer then has to figure out a time and have briefs

14     presented so that he or she knows what to expect at the

15     settlement conference if they're going to be of any help.     11:35:04

16          I think we better let you decide if you're ready to go

17     with that.

18          MS. BACALZO:  Okay.  I'll further explore that.

19          THE COURT:  We've got to get a scheduling order in

20     place and get it in place soon.                                11:35:16

21          MS. BACALZO:  Okay.

22          THE COURT:  Anything else?  Any questions about the

23     Court's management policies?

24          MS. BACALZO:  No, Your Honor.

25          MR. HALL:  No, Your Honor.                                11:35:23

```
 1              THE COURT:  We'll make a ruling on the pending motions
 2    and we will enter a scheduling order and see where this
 3    litigation leads.
 4              Thank you, Counsel.
 5              MS. BACALZO:  Thank you.                              11:35:32
 6              (Proceedings concluded at 11:35 a.m.)
 7
 8                            -oOo-
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3

4                    C E R T I F I C A T E

5

6          I, CANDY L. POTTER, do hereby certify that I am duly

7    appointed and qualified to act as Official Court Reporter for

8    the United States District Court for the District of Arizona.

9          I FURTHER CERTIFY that the foregoing pages constitute

10   a full, true, and accurate transcript of all of that portion of

11   the proceedings contained herein, had in the above-entitled

12   cause on the date specified therein, and that said transcript

13   was prepared under my direction and control.

14         DATED at Phoenix, Arizona, this 27th day of January,

15   2012.

16

17

18                              s/Candy L. Potter_____
19                              Candy L. Potter, RMR, CRR

20

21

22

23

24

25