```
                UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF ARIZONA
                   _____


Tracy Rexroat,                  )
                                )   No. CV 11-1028-PHX-PGR
        Plaintiff,              )
                                )
        vs.                     )       Phoenix, Arizona
                                )       February 22, 2012
Arizona Department of           )          11:31 am.
Education, et al.,              )
                                )
        Defendants.             )
_____)


        BEFORE:  THE HONORABLE PAUL G. ROSENBLATT, JUDGE

             REPORTER'S TRANSCRIPT OF PROCEEDINGS

                  DISCOVERY CONFERENCE CALL
```

**TELEPHONIC APPEARANCES:**

For the Plaintiff:
        Hall & Chelle
        By:  **Cameron Matthew Hall**, Esq.
            Michael Zoldan, Esq.
        7077 East Marilyn Road, Suite 140
        Scottsdale, Arizona 85254

For the Defendants:
        Office of the Attorney General
        By:  **Rachel M. Bacalzo**, Esq.
        1275 West Washington Street
        Phoenix, Arizona 85007

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

| | | |
|---|---|---|
| 1 | (Proceedings begin at 11:31 a.m.) | |
| 2 | THE CLERK:  Civil case 11-1028, Tracy Rexroat versus | |
| 3 | Arizona Department of Education and others.  This is the time | |
| 4 | set for discovery conference call. | |
| 5 | Please announce your presence for the record. | 11:31:42 |
| 6 | MR. HALL:  Cameron Hall and Michael Zoldan on behalf | |
| 7 | of Plaintiff, Tracy Rexroat. | |
| 8 | MS. BACALZO:  Good morning, Your Honor, this is | |
| 9 | Rachel Bacalzo with the Arizona Attorney General's Office | |
| 10 | appearing on behalf of the Defendant, State of Arizona | 11:31:53 |
| 11 | Department of Education. | |
| 12 | THE COURT:  Well, good morning, Counsel. | |
| 13 | This is the time fixed by the Court for a resolution | |
| 14 | conference on this discovery dispute. | |
| 15 | And what's the problem? | 11:32:08 |
| 16 | MR. HALL:  Yes, Your Honor.  This is Cameron Hall. | |
| 17 | And our issue at this point is we want to keep it as | |
| 18 | limited in scope as possible, and as simple as possible. | |
| 19 | We've requested a number of documents, and we've | |
| 20 | requested them under Rule 34(a)(1)(A) and electronic ESI, | 11:32:27 |
| 21 | electronically stored information.  The respondent has -- the | |
| 22 | State has instead produced everything in pdf form.  And, in | |
| 23 | fact, instead of providing ESI, in a number of instances has | |
| 24 | gone in and pulled up the properties of some of their | |
| 25 | electronic documents and given us screen shots of the | 11:32:55 |

1  properties of those documents and not the ESI itself.

2  And that is, we believe, a clear violation of Rule 34.
3  And, in fact, there's a recent January 17, 2012 decision that's
4  almost identical from Judge Martone.  And the defendants in
5  that case were similarly providing screen shots, and                11:33:22
6  Judge Martone went through an analysis and ordered that they
7  provide the actual ESI, as requested.  And, Your Honor, we
8  would ask the same thing.

9  MS. BACALZO:  Your Honor, this Rachel Bacalzo, there
10 are actually two matters.  One is as addressed by Mr. Hall, and     11:33:39
11 then the defendant also has a matter that I would like to
12 present to the Court, specifically plaintiff's failure to
13 comply with Rule 26 and Rule 33.  We can address that later.

14 But turning to Mr. Hall's request, this issue was
15 brought to me as a failure to comply with Rule 34.  The State       11:34:00
16 has more than complied with Rule 34.

17 Specifically, we received a request for production of
18 documents, and based on our objections and responses we've
19 produced over 580 pages of paper, 200 of which were produced in
20 native format.                                                      11:34:23

21 As Your Honor may recall from our discussion on the
22 record at the Rule 16 conference, there are some very
23 significant challenges for the Department of Education to
24 produce all documents in native format.  And I provided
25 Your Honor and Mr. Hall copies of what -- the best version we       11:34:39

1 can give is native format, and that included the properties.
2 That's all we can do. ADE does not track any changes to
3 documents.
4     So as I sit here today, Your Honor -- and I told
5 Mr. Hall this during our conference last week -- I do not know                11:34:56
6 how he feels that ADE has not fully complied with our
7 obligations under Rule 34.
8     We started going through the request. We got to the
9 second request, and Mr. Hall said, I don't think we're getting
10 anywhere, we need to call the Court. And I said, well, I don't                11:35:13
11 understand what the objection is. I'm telling you we produced
12 everything. And I'm going to tell the Court that I don't think
13 we have conferred in good faith under Rule 37.
14     So as I'm sitting here today, based on everything I've
15 communicated to Mr. Hall and to the Court on this                             11:35:35
16 electronically stored information issue, it's difficult for me
17 to respond because I do not know what specifically he feels we
18 have not provided.
19     For example, he asked for the personnel file. He got
20 the personnel file. Rule 34 requires us to produce documents                  11:35:51
21 as they're kept in the normal course of business. That's
22 specifically in the Rule, Section (b)(2)(E) roman numeral --
23 letter (i), excuse me. So we do not keep an electronic copy of
24 the personnel file. That's why they got a paper copy.
25     But to the extent we could provide information in                        11:36:14

1  native format, we did that.  If Mr. Hall is not satisfied with
2  the form, that's the best we can do.  And I've worked
3  extensively with our IT staff.  And as I showed the Court, the
4  best we can do is provide the properties.
5       And I also said there is no relevance to that.  It          11:36:35
6  tells you basically who copied the document to a disk.  I
7  objected to going through all kinds of work trying to find
8  electronic versions of documents, because it wasn't going to
9  provide any relevant information and it would be very costly
10 for the State.                                                   11:36:55
11      So it's difficult to respond to this request not
12 knowing specifically what he feels that we have not produced.
13 I've asked for that information and I still do not have it.
14      On page 11 of the transcript from the Rule 16
15 conference, Your Honor said specifically that you were           11:37:12
16 declining to issue a blanket order for ADE to produce all
17 information in native form -- all documents in native format.
18 And you said to Mr. Hall that he should be specific about any
19 requests for electronic information.  And I think that that is
20 appropriate.  I've tried to ask Mr. Hall for that as well.       11:37:36
21      We feel that we've done -- more than complied with
22 Rule 34, because even though our official copy of documents is
23 kept in paper form, where we could we went in electronically
24 and provided a copy on a disk.  And as I mentioned, with our
25 responses and objections to the Rule 34 request, 200 of the 500  11:37:57

1  pages produced at that time were in native format.
2         MR. HALL: Your Honor, if I could respond briefly.
3  That's not entirely accurate.
4         And as an initial matter, the call -- the meet and
5  confer and the intent to resolve this in good faith lasted                11:38:19
6  approximately 30 minutes.  And it took that long to get through
7  not even a full two RFPs.
8         And the issue for us is we may try -- we may have to
9  come back on some of the specific objections the State has
10 asserted.  But at this point all we're asking for is the                  11:38:39
11 electronically stored information, ESI, that they're obligated
12 to provide to us under Rule 34.
13        And the disk we received did not have 200 documents on
14 it.  It may have 200 pages.  I really doubt that as well.  It
15 has 28 files in five different folders.  So we received a sum             11:39:00
16 total of 28 individual e-mails or word documents as ESI, and
17 the rest of it we're simply told it's not relevant.
18        I've frankly never had that argument made before that
19 the ESI is not relevant so we just don't get it.
20        THE COURT: Wait, wait, wait, wait, wait, I have some               11:39:28
21 questions.
22        MR. HALL: Yes, Your Honor.
23        THE COURT: First of all, she's just -- counsel just
24 said that the paper file -- the personnel file is not held
25 electronically.                                                            11:39:38

| | | |
|---|---|---|
| 1 | Did I understand that correctly? | |
| 2 | MS. BACALZO: Yes, Your Honor. | |
| 3 | THE COURT: And you have that, Counsel; correct? | |
| 4 | MR. HALL: Your Honor, I don't -- I don't think that's | |
| 5 | entirely accurate. The discovery request is not limited just | 11:39:46 |
| 6 | to the personnel file. It would also include e-mails that went | |
| 7 | back and forth. The HRAS system, the payroll system is another | |
| 8 | issue. These documents certainly exist or existed in the | |
| 9 | near -- in the very near past in electronic format. They | |
| 10 | didn't just spring into life as paper. | 11:40:12 |
| 11 | And the very mutation of that document over time, the | |
| 12 | transmittal of it between different individuals and | |
| 13 | departments, that you just cannot look at that -- you lose all | |
| 14 | of that information in a paper document. And that's why the | |
| 15 | ESI I believe is critical here, and the very purpose of | 11:40:33 |
| 16 | Rule 34, as we've cited to. | |
| 17 | THE COURT: I think you're both talking about apples | |
| 18 | and oranges, as near as I can tell. | |
| 19 | MS. BACALZO: I agree, Your Honor. | |
| 20 | THE COURT: First of all, this is a pay case. And the | 11:40:49 |
| 21 | plaintiff alleges that she's subject to unlawful gender | |
| 22 | discrimination because her male counterparts received higher | |
| 23 | salaries for the same work. So the defendant's position is | |
| 24 | that that's not exactly true, that she -- some males and | |
| 25 | females receive higher salaries than she does, and she receives | 11:41:17 |

Case 2:11-cv-01028-PGR   Document 50   Filed 02/27/12   Page 8 of 20

8

| | | |
|---|---|---|
| 1 | a higher salary than some other females and one male do. | |
| 2 | It seems to me that the discovery needs to concern, | |
| 3 | who are the employees, how much are they paid, what is their | |
| 4 | responsibility, and where did the discrimination take place? | |
| 5 | And it seems like a rather simple factual background to me, | 11:41:41 |
| 6 | Counsel. | |
| 7 | What is all these e-mails that you're talking about? | |
| 8 | MR. HALL: Your Honor, we agree with Your Honor as far | |
| 9 | as the focus of the case. How the salary decisions are | |
| 10 | reached, though, is very much going to play into the case and | 11:42:01 |
| 11 | the evidence that we put on. | |
| 12 | So, for example, a committee can interview a female | |
| 13 | candidate, there's a range of salaries that they can offer to | |
| 14 | her. And there's then e-mail traffic where they talk about the | |
| 15 | candidate. There's documents where they are drafting an offer | 11:42:21 |
| 16 | letter and changing the amount that they're going to offer. | |
| 17 | And that stream of ESI is going to be critical to obtain and | |
| 18 | compare to the stream of ESI when a male candidate is in a | |
| 19 | similar position for the same job. | |
| 20 | So it's not simply enough for us to get the final | 11:42:40 |
| 21 | offer letter that went out to each of the male and female | |
| 22 | employees and candidates, and we just have to take that and | |
| 23 | we're stuck with nothing else. | |
| 24 | It's critical to our case, Your Honor, to be able to | |
| 25 | look at the comments and the reasonings that went into those | 11:43:00 |

1  decisions, and that support our opinion -- our position is that
2  do not support the higher salaries for some of these male
3  employees.
4        THE COURT:  So what you seek are e-mails going back
5  between the people that fix the salaries and how they                11:43:16
6  determined what that salary would be, which may show that they
7  said she's a woman and, therefore, she doesn't deserve that
8  salary.  Is that basically what you're looking for?
9        MR. HALL:  Well, yes, Your Honor, that's one slice of
10 it.                                                                   11:43:36
11       And, for example, the range of salary can be based
12 on -- if there's some unusual reason in the person's
13 background, if they had a prior job that paid a very high
14 salary, under the State under the applicable range could offer
15 them a higher starting salary.                                        11:43:53
16       It would be very relevant if the e-mail traffic and
17 the documents, the ESI documents, show that for male candidates
18 they just accept on face value when somebody says, I made 100
19 grand in my last job, they just accept that on face value, and
20 females they really go in and scrutinize the resume and the          11:44:12
21 application.  That's not going to show up anywhere except in
22 the e-mail traffic and in the documents maintained on the
23 relevant personnel's local computers.
24       THE COURT:  Okay.  Miss Bacalzo --
25       MS. BACALZO:  Yes, Your Honor.                                  11:44:27

1  THE COURT: Wait, wait, wait, wait, wait. How can
2  they get that information?
3  MS. BACALZO: He has it. He has the information of
4  how the higher salary was calculated. He didn't ask for that,
5  but we provided that. We also provided the salary history for    11:44:40
6  Tracy Rexroat, the plaintiff, and her counterparts. He doesn't
7  have just the offer letter. We have -- as a public entity we
8  have an obligation to document how salaries are arrived at, as
9  well as any changes to salary. We don't do that typically by
10 e-mail. He has documents for each of those individuals, as      11:45:03
11 well as the detailed chart of salary history.
12 Changes in salary are sometimes for some employees
13 driven by acts of the legislature. So when he says he wants
14 this e-mail traffic, first of all, he never requested that.
15 But what we have disclosed are the relevant documents and the   11:45:22
16 witnesses who came to arrive at the initial hire salary for
17 Tracy Rexroat. He's had that for a long time. And then also
18 for each of her counterparts. What went into calculating the
19 initial hire salary. All of those documents are forms that ADE
20 by practice continues to follow.                                11:45:49
21 So when he keeps referring to e-mail traffic, I do not
22 know what he is referring to. We don't typically hire people
23 with e-mail exchanges.
24 However, we have produced e-mails between one of the
25 witnesses and Miss Rexroat regarding the hire process.          11:46:10

|   |   |   |
|---|---|---|
| 1 | So we have searched our computers. I have had | |
| 2 | everyone in Miss Rexroat's chain of command, and this is since | |
| 3 | the outset of this case, and HR, search their personal | |
| 4 | computers, some of them have searched them several times, for | |
| 5 | any documents that exist on their computers but do not exist in | 11:46:31 |
| 6 | the paper files. | |
| 7 | We are very confident that we have produced all | |
| 8 | relevant documents, and that we're not withholding anything | |
| 9 | relevant to this issue. | |
| 10 | And you're absolutely right, Your Honor, this is a | 11:46:46 |
| 11 | straightforward salary case. We don't make salary decisions | |
| 12 | based on an e-mail string. We have to cut paper. Those | |
| 13 | paper -- that paper trail has been produced. And the relevant | |
| 14 | documents really are, when somebody is hired their salary | |
| 15 | history. Those documents, Mr. Hall has. As well as a chart | 11:47:08 |
| 16 | that one of the ADE employees prepared at my direction. And | |
| 17 | that was not ever something he asked for. | |
| 18 | THE COURT: Okay. Mr. Hall, what's wrong with all | |
| 19 | that? | |
| 20 | MR. HALL: Your Honor, we don't have that. We have | 11:47:26 |
| 21 | nine e-mails. That's what we have for e-mail traffic. | |
| 22 | And maybe I'm going out on a limb here, but I find it | |
| 23 | hard to believe that a committee gets together, interviews a | |
| 24 | bunch of candidates, and there's zero e-mail traffic about it. | |
| 25 | What the State is arguing is all we did is their final product. | 11:47:46 |

1   We get their version of what happened as they produce it in a
2   final paper document.
3          And we want to get access to -- for behind the scenes
4   part of what went into the making of that, and the comments and
5   the questions, and all of the things that go into normal                  11:48:06
6   corporate communications.
7          By way of comparison, Your Honor, we produced to the
8   State nearly 700 separate electronic documents from a single
9   plaintiff.  And the vast majority of those were e-mails that
10  are relevant and requested.  And we located this because we              11:48:31
11  have one side of them from our client.  But the State is saying
12  that the other side doesn't exist.
13         MS. BACALZO:  You know, if we had discussed this last
14  week I might have a response.  I have no idea what Mr. Hall is
15  referring to.                                                             11:48:50
16         We have produced all of the paper that's been cut
17  regarding salaries for Miss Rexroat and for her counterparts.
18  What Mr. Hall is -- has produced is 3,000 pages.  Some have to
19  do with salary.  And there's a whole lot of stuff that has no
20  relevance to the lawsuit, like adoption papers of a Chinese              11:49:11
21  baby.  It's well before Miss Rexroat came to be a State
22  employee.  There was a lot of just junk in these thousands of
23  pages.
24         So, again, I've invited Mr. Hall since September, if
25  you can identify something specific that you feel we have not           11:49:32

1 produced, please tell me so I can address it with my client.
2 But we have searched manually through paper files, through the
3 computer systems of anybody who would have been involved.
4     He's saying, well, I think there must have been some
5 e-mails.  All right, well, I don't know exactly what you're         11:49:53
6 talking about.  We've produced those hire documents.  I mean,
7 when we hire somebody we've got certain documents about the
8 successful candidate.
9     So I don't know what more we can do.  The employees
10 have searched their computers multiple times.  I think this is     11:50:09
11 a fishing expedition.  I don't even think Mr. Hall knows what
12 he is asking for.
13     MR. HALL:  I certainly do.
14     And, Your Honor, the representation here is that
15 the -- there's been a legal hold that's been put in place for     11:50:26
16 all documents, including ESI, from the State.  And that all of
17 the employees that would have a -- potentially have relevant
18 or -- relevant evidence or evidence that would lead to the
19 discovery of relevant evidence have gone in and searched their
20 computers and they've looked at the servers and they are         11:50:48
21 confident that they have only 28 responsive documents in ESI in
22 native format, then if we can get a verification of that in
23 writing and a description of what they did, what search terms,
24 what search modality, what the State did to go out and look for
25 ESI.                                                              11:51:10

| | | |
|---|---|---|
| 1 | MS. BACALZO: I feel like Mr. Hall has just | |
| 2 | represented what I said, I think the sun rose at 2:00 o'clock | |
| 3 | this morning. I mean, I outlined what we have done. | |
| 4 | We keep files and paper for very good reason. Based | |
| 5 | on our current system it costs $1 million to maintain the | 11:51:29 |
| 6 | information that employees are inputting into the system on two | |
| 7 | servers, and that's just for three years. And those servers | |
| 8 | are full. | |
| 9 | He mentioned search terms. That first request that we | |
| 10 | do a search term, search of our servers, was first made last | 11:51:46 |
| 11 | week. It was never part of the request for production. | |
| 12 | But it's difficult because this issue keeps moving. | |
| 13 | If we're going to stick with the Rule 34 request, which is what | |
| 14 | was presented to me, the issue is, what have we failed to | |
| 15 | produce that has been requested? | 11:52:08 |
| 16 | I have represented to Your Honor that we have looked | |
| 17 | for responsive information. That process started months and | |
| 18 | months before we ever got actual discovery requests from | |
| 19 | Mr. Hall. We were in the process of identifying what relevant | |
| 20 | categories of information might be out there, capture it and | 11:52:27 |
| 21 | preserve it, so that we can access it if and when that was | |
| 22 | needed. | |
| 23 | That process continues to this day, and we have | |
| 24 | produced all the relevant information regarding salaries and | |
| 25 | duties. He has that information. | 11:52:45 |

| | | |
|---|---|---|
| 1 | So I'm afraid without a specific request, what are we | |
| 2 | looking for, I don't know that my client can do any better, nor | |
| 3 | could I ask my client to search -- searching for a needle in a | |
| 4 | haystack. | |
| 5 | THE COURT: Okay. That's all. | 11:53:03 |
| 6 | Here's the situation: The plaintiff is going to get, | |
| 7 | in one form or another, everything that it's entitled to get, | |
| 8 | either electronically or in paper form. | |
| 9 | Now we know that if the defendant withholds | |
| 10 | information or evidence, the ax will come down very severely. | 11:53:21 |
| 11 | By the same token, the plaintiff is not entitled to have the | |
| 12 | Government reform its computer system and provide everything | |
| 13 | that might be in there just to satisfy electronic stored medium | |
| 14 | information documentation or discovery. | |
| 15 | So first of all, you haven't fully conferred with each | 11:53:45 |
| 16 | other. | |
| 17 | Secondly, you're still going to have to come down to | |
| 18 | specific requests and why they are reasonable, why they are | |
| 19 | relevant, before the Court's going to enter any order on this | |
| 20 | particular issue. And the Court isn't going to do that until | 11:54:04 |
| 21 | after you've conferred, after you've tried to exchange more | |
| 22 | information, tried to determine what each other believes that | |
| 23 | you need. | |
| 24 | And then, if you haven't gotten it by that time, | |
| 25 | Mr. Hall, then you're going to have to file a motion for | 11:54:17 |

|   |   |   |
|---|---|---|
| 1 | production, motions to compel, or whatever you believe is | |
| 2 | appropriate under the rules. | |
| 3 | But you can't make the State turn over their computers | |
| 4 | to you while you search through them looking for something that | |
| 5 | may be relevant to this particular issue, which is a narrow | 11:54:34 |
| 6 | issue. | |
| 7 | MR. HALL: Yes, Your Honor. We're not looking | |
| 8 | for -- asking for that at all. And we certainly don't want | |
| 9 | more information to sort through than is going to be useful for | |
| 10 | us, because it would be a waste -- not only a waste of our | 11:54:52 |
| 11 | time, but our client's time as well. | |
| 12 | What we're looking for are the specific requests I've | |
| 13 | propounded and the ESI that comes along with that. And the | |
| 14 | response we consistently every time get from the State is, | |
| 15 | well, you tell us what specific document you want in ESI and | 11:55:10 |
| 16 | we'll go look for it on a document-by-document basis. And that | |
| 17 | frankly just turns Rule 34 upside down and on its head. | |
| 18 | It's not -- we don't know what documents exist. We | |
| 19 | know the categories -- | |
| 20 | THE COURT: Well, you have to know something, because | 11:55:30 |
| 21 | you filed a Complaint. And that had to be based on something | |
| 22 | other than the fact that the plaintiff looked around and saw | |
| 23 | some people that were getting paid more than she was. | |
| 24 | MR. HALL: Well, yes, Your Honor, and we do. And as I | |
| 25 | mentioned, we produced nearly 700 separate electronic | 11:55:43 |

1   documents.
2         THE COURT:  Well, what does the baby have to do
3   with --
4         MR. HALL:  Well, I believe what she's referring to is
5   probably some e-mail traffic that was going back and forth and          11:55:53
6   had to do with a travel issue and --
7         THE COURT:  So you want all this e-mail traffic that
8   the State may have?
9         MR. HALL:  Just as it relates to the claims in this
10  case, Your Honor.                                                       11:56:07
11        THE COURT:  Well, I've made my ruling.  You need to
12  confer.  And at that -- after your conferring and production
13  and understanding of what each other needs, then you're going
14  to have to file a motion.
15        MR. HALL:  Okay.  Thank you, Your Honor.                          11:56:22
16        MS. BACALZO:  Your Honor, on the issue for the
17  defendant, very briefly, we served some discovery requests on
18  the plaintiff back in September.  We granted two extensions.
19  The last deadline for the initial disclosure statement and
20  discovery responses was December 5th.  There have been some             11:56:40
21  supplements.  We still do not have the calculations, amounts
22  and documents for each category of Miss Rexroat's damages, as
23  well as responses to interrogatories 1 and 8.
24        When I brought this issue to Mr. Hall's attention, he
25  said he was in the process of preparing a supplemental                  11:57:03

```
 1   disclosure.  I said that her deposition is at least currently
 2   set for March 6, when are we going to get it?  And he said,
 3   when you provide me the information you're supposed to provide
 4   me.
 5           As I think Your Honor knows, under Rule 26 a party may        11:57:16
 6   not hold hostage a disclosure required under Rule 26.
 7           THE COURT:  What about that, Mr. Hall?
 8           MR. HALL:  That's not accurate, Your Honor.
 9   We -- this issue was raised at the very end of the meet and
10   confer that I had requested about ESI.  We had no chance to          11:57:32
11   discuss it in any substantive way at all.  And, in fact, as I
12   told Miss Bacalzo -- as I told opposing counsel at the time, we
13   were objecting to even bringing this up at -- during this call
14   because we had no chance to discuss it and try to resolve it at
15   all.                                                                 11:57:55
16           THE COURT:  Well, you better resolve that, because
17   you've got a deposition coming up and they need that
18   information.  If it has to be supplemented, I suppose that's
19   another reason.  But you have a deadline and you didn't meet
20   that deadline.                                                       11:58:08
21           MR. HALL:  Your Honor, we did provide responses.  We
22   provided the initial disclosure.  The State is just unhappy
23   with the amounts that we're providing.  We're still
24   supplementing.  We've already had a supplemental disclosure.
25   And we're getting everything out as timely and as fast as we         11:58:23
```

```
 1   can.
 2           THE COURT:  Well, confer on this matter and get it
 3   resolved.
 4           MR. HALL:  Yes, Your Honor.
 5           THE COURT:  That's all.                              11:58:30
 6           (Proceedings concluded at 11:58 a.m.)
 7
 8                               -oOo-
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4                      C E R T I F I C A T E
 5
 6          I, CANDY L. POTTER, do hereby certify that I am duly
 7   appointed and qualified to act as Official Court Reporter for
 8   the United States District Court for the District of Arizona.
 9          I FURTHER CERTIFY that the foregoing pages constitute
10   a full, true, and accurate transcript of all of that portion of
11   the proceedings contained herein, had in the above-entitled
12   cause on the date specified therein, and that said transcript
13   was prepared under my direction and control.
14          DATED at Phoenix, Arizona, this 27th day of February,
15   2012.
16
17
18
                                         s/Candy L. Potter_____
19                                       Candy L. Potter, RMR, CRR
20
21
22
23
24
25
```