Thomas C. Horne
Attorney General

Rachel Bacalzo, Bar No. 016117
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-7750
Facsimile: (602) 542-7644
Rachel.Bacalzo@azag.gov

Attorneys for Defendant State of
Arizona, Department of Education

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tracy Rexroat, an Arizona Resident,<br><br>Plaintiff,<br><br>vs.<br><br>Arizona Department of Education; and,<br>State of Arizona, State Board of Education,<br><br>Defendants. | Case No: CV11-01028-PGR<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND MOTION FOR SANCTIONS** |

Defendant State of Arizona, Department of Education ("ADE"), through undersigned counsel, opposes *Plaintiff's Memorandum of Law in Support of Her Motion to Compel Discovery/Motion for Sanctions* ("motions"). The Court must deny the motions because they are untimely and unfounded. This Response is supported by the attached Memorandum of Points and Authorities and the Court's record in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Rexroat's Motions Should Be Denied as Untimely.**

Rexroat waited more than one month after the discovery cutoff to seek additional discovery from ADE. This Court ordered discovery to be completed by March 16, 2012:

> All discovery, including answers to interrogatories, shall be completed by **March 16, 2012,** and supplemental disclosures and discovery shall thereafter be made as required by Fed.R.Civ.P. 26(e). Discovery which cannot be timely responded to prior to the discovery deadline will be met with disfavor, and could result in denial of an extension, exclusion of evidence or the imposition of other sanctions….

1  Doc. 29, ¶ 3 (emphasis in original.)  "The purpose of a discovery cutoff is to protect the
2  parties from a continuing burden of producing evidence and to assure them adequate
3  time to prepare" for dispositive motions or trial.  *Whitaker Corp. v. Execuair Corp.,* 736
4  F.2d 1341, 1347 (9th Cir. 1984).  The Court cautioned the parties about discovery after
5  March 16, 2012.  The Court should deny Rexroat's motions solely on the grounds that
6  she filed them weeks after the discovery cutoff.  *See Johnson v. Mammoth Recreations,*
7  *Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) citing *U.S. Deminator, Inc. v. Factory Ship*
8  *Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985); *Dedge v. Kendrick*, 849 F.2d
9  1398 (11th Cir. 1988).
10       Rexroat has demonstrated an ongoing disregard for the Court's deadlines and
11  orders.  The June 13, 2011 Order Setting Scheduling Conference directed
12  "…**DISCOVERY TO COMMENCE PRIOR TO THE SCHEDULING**
13  **CONFERENCE.**"  Doc. 5, ¶ 2.  (emphasis in the original.)  Rexroat failed to conduct
14  any discovery for six months. [Exh. 1, Transcript from November 21, 2011 Scheduling
15  Conference ("Tr. of Scheduling Conf."), pp. 3-4.]  Her counsel was late for the
16  Scheduling Conference, and he failed to submit a proposed case management plan.  [*Id.*]
17  Rexroat's time-barred Title VII claims were dismissed.  Doc. 26, 27.  Rexroat failed to
18  respond to ADE's discovery requests in a timely manner.  ADE served discovery on
19  September 16, 2011.  Doc. 18.  Under the Federal Rules of Civil Procedure, Rexroat had
20  30 days (plus three days for mailing) to serve her discovery responses.  Rexroat did not
21  serve her responses or Rule 26 initial disclosures until December 5, 2011, and she never
22  disclosed her damages computations as required by Rule 26(a)(1)(A)(iii).  [Exh. 1, Tr. of
23  Scheduling Conf., pp. 18-19; Exh. 2, Tr. of February 22, 2012 Discovery Conf., pp. 17-
24  19; Exh. 3, Bacalzo Decl. ¶ 2.]
25  **II.    Rexroat Fails To Establish "very good cause" for Additional Discovery.**
26       Even if Rexroat's motion to compel was timely, her requests fall far short of the
27  standard required.  The Court's November 22, 2011 Scheduling Order prohibits
28

stipulations to extend the established deadlines and requires "very good cause" for a motion to extend any deadlines to be granted:

> **(10) The parties are cautioned that the deadlines set in this Scheduling Order shall be enforced, and that the Court will not entertain any stipulations to continue them—any request to extend any of the deadlines set herein must be made by means of a motion, joint or otherwise, and no such motion shall be granted unless very good cause is shown.**

Doc. 29, pp. 3-4 (emphasis in original); 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1522.1 at 231 (2d ed. 1990) (the good cause standard requires a party to show that existing deadlines could not be met despite the party's diligence.) Although Rexroat did not specifically request the Court to extend the discovery deadline, her motion to compel discovery serves the same purpose. In order to grant Rexroat's motion to compel discovery, the Court must also extend the discovery deadline. Thus, Rexroat must establish "very good cause" for additional discovery. This she fails to do.

     **A.**    **Rexroat Failed to Confer With ADE Regarding Its Responses to Rexroat's Interrogatories and Requests For Admission.**

The Court's Scheduling Order reiterated the parties' obligation to confer before filing any discovery-related motions: "**Parties are directed to LRCiv. 7.2(j), which prohibits filing discovery-related motions unless the parties have first met to resolve any discovery difficulties.**" Doc. 29, ¶ 3. (emphasis added). *Plaintiff's Statement Pursuant to Local Rule 37.1* is 80 pages. Doc. 65. The first 50 pages address ADE's responses to Rexroat's Rule 34 Requests for Production of Documents. *Id*., pp. 1-50. The next 17 pages address ADE's responses to Rexroat's Rule 33 Interrogatories. *Id*., pp. 50-67. The remaining pages address ADE's responses to Rexroat's Rule 36 Requests for Admission. *Id*., pp. 67-79.

Rexroat made no effort to discuss ADE's responses to interrogatories or requests for admission before she filed her motion to compel discovery. [Exh. 3, Bacalzo Decl. ¶ 3.] As the attached correspondence demonstrates, the parties conferred only about ADE's responses to Rexroat's Rule 34 requests. [Exh. 4, January 12, 2012 letter; Exh. 5,

1 March 1, 2012 letter; Exh. 6, March 2, 2012 letter; Exh. 7, March 22, 2012 E-mail; and
2 Exh. 8, April 6, 2012 letter.]
3      On February 22, 2012, the Court instructed the parties to confer regarding ADE's
4 responses to Rexroat's Rule 34 requests:

> So first of all, you haven't fully conferred with each other.
> Secondly, you're still going to have to come down to specific requests and why they are reasonable, why they are relevant, before the Court's going to enter any order on this particular issue. And the Court isn't going to do that until after you've conferred, after you've tried to exchange more information, tried to determine what each other believes that you need.
> And then, if you haven't gotten it by that time, Mr. Hall, then you're going to have to file a motion for production, motions to compel, or whatever you believe is appropriate under the rules.
> But you can't make the State turn over their computers to you while you search through them looking for something that may be relevant to this particular issue, which is a narrow issue.

[Exh. 2, Tr. of Discovery Conf. on 2/22/12, pp. 15-16; *see also* pp. 2-3, which establishes the scope of the discovery conference was ADE's responses to Rexroat's Rule 34 requests.] Compliance with the Court's Scheduling Order and LRCiv7.2(j) is not optional. Because Rexroat failed to confer with ADE, she cannot establish very good cause for any of the relief she requested regarding ADE's responses to her Rule 33 Interrogatories and Rule 36 Requests for Admission. The Court must deny her requests.

    **B.**    **Rexroat Fails to Demonstrate that ADE Has Withheld Relevant, Responsive Documents in Response to Rexroat's Rule 34 Requests.**

On February 22, 2012, Rexroat's counsel agreed with the Court's assessment that discovery should be narrowly focused on the issues presented:

> It seems to me that the discovery needs to concern, who are the employees, how much are they paid, what is their responsibility, and where did the discrimination take place? And it seems like a rather simple factual background to me, Counsel.

[Exh. 2, Tr. of Discovery. Conf. on 2/22/12, pp. 7-8.]

4

1 Throughout discovery and without specific Rule 34 requests from Rexroat, ADE
2 produced its key documents that reflect the salary and job duties of Rexroat and her
3 counterparts. [Exh. 9, Belanger Decl. ¶¶ 5-6.] ADE also produced, subject to
4 reasonable, good faith objections, documents and electronically stored information
5 ("ESI") that are reasonably available and responsive to Rexroat's Rule 34 requests. [*Id.*,
6 ¶¶ 5-16.] To identify responsive documents and ESI, ADE searched its official paper
7 files and individual computers to ensure that its production was as complete as
8 reasonably possible. [Exh. 9, Belanger Decl. ¶ 10; Exh. 12, Brite Decl. ¶ 10.] Rule 34
9 establishes the procedure by which documents and electronically stored information
10 must be produced. For the reasons set forth below, ADE complied fully with that
11 procedure by producing "documents [including ESI] as they are kept in the usual course
12 of business" and "organizing them to correspond with the categories in the request."
13 Rule 34(b)(2)(E).

14 **Request 1** asked ADE to produce "any and all documents which support,
15 evidence, relate or otherwise pertain to any and all personnel policies of Defendant in
16 effect from January 1, 2007 to the present…." Rexroat argues, "As written, this request
17 merely calls for the production of 'personnel policies' for a limited five-year span and
18 provides specific examples of information that would satisfy the request." Doc. 65, p. 7,
19 lines 8-11. By Rexroat's own admission, ADE satisfied Request 1. ADE produced in
20 native format and paper form, five years of its misconduct, hiring, internal complaints
21 and grievances, equal employment opportunity, and salary and compensation policies.
22 [Exh. 9, Belanger Decl. ¶ 16; Exh. 10, Mendez Decl. ¶¶ 3-6.]

23 Rexroat argues that ADE failed to produce drafts of those policies and "Hiring
24 Packets". Doc. 65, pp. 7-9. ADE does not retain policy drafts, but even if it did, Rexroat
25 failed to establish the relevance of drafts. In addition, ADE's Closed Hire Packet files
26 (essentially a job search created and maintained by ADE's Human Resources) do not
27 contain policies or drafts of policies and are not relevant to Rexroat's requests for ADE's
28 policies. [Exh. 9, Belanger Decl. ¶¶ 7, 16.]

1      Rexroat also argues that ADE must conduct word searches of its computers to
2 locate additional documents, but she cannot identify what relevant policies ADE failed to
3 produce.  Doc. 65, pp. 7-9.  Regardless, ADE cannot successfully run word searches on
4 its computer servers.  [Exh. 10, Mendez Decl. ¶ 9-11; Exh. 11, Masterson Decl. ¶¶ 3-9.]
5 ADE would have to reform its computer system to conduct successful word searches of
6 its servers.  As the Court noted, ADE is not required to reform its computer system to
7 comply with its discovery obligations:

> Now we know that if the defendant withholds information or evidence, the ax will come down very severely.  By the same token, the plaintiff is not entitled to have the Government reform its computer system to provide everything that might be in there just to satisfy electronic stored medium information documentation or discovery.

[Exh. 2, Tr. of Discovery. Conf. on 2/22/12, p. 15.]

**Requests 2 and 3** asked ADE to produce documents relating to Rexroat's internal complaint of gender discrimination.  She never made such a complaint, so there are no responsive documents.  Rexroat raises no substantive argument for the Court to address. Doc. 65, pp. 15 and 16.

**Request 4** asked ADE to produce Rexroat's personnel file and any documents that were ever part of that file.  ADE maintains its personnel files in paper form only. ADE produced a true and correct copy of Rexroat's official personnel file and does not believe any documents were removed.  [Exh. 9, Belanger Decl. ¶¶ 5, 11-12.]  No electronic search of ADE's computers would make Rexroat's copy of her personnel file any more complete.  In fact, some documents, such as those with handwriting on them, are not typically stored on ADE's computer system.  [Exh. 9, Belanger Decl. ¶ 12.] Thus, ADE would not be able to reconstruct its personnel files through an electronic search of its computers.  Even if some documents could be located on ADE's computer system, based on its September 2011 test search, ADE estimates that it will take between 5 to 15 minutes to search for, locate and produce an electronic copy of each document, and the only additional information that ADE can produce is the document's properties.

6

1 [Exh. 9, Belanger Decl. ¶ 19; Exh. 10, Mendez Decl. ¶¶ 7-8.] Rexroat's motion is silent
2 on the relevance of each document's properties. Doc. 65, pp. 17-19. Comparatively, the
3 process of producing the properties of documents that already exist in Rexroat's official
4 personnel file would be very time-consuming, but would not produce information that is
5 relevant to this case.

6     **Requests 5-9** asked ADE to produce the personnel files of ADE employees, Shea
7 Padilla, Stephanie Hahn, Ruth Kerr, James Wojcik, and Jason Wojcik. From those
8 personnel files, ADE produced only the documents relating to salary and duties. [Exh. 9,
9 Belanger Decl. ¶¶ 5-6.] ADE's production is consistent with the Court's assessment of
10 the proper scope of discovery, with which Rexroat agreed. [Exh. 2, Tr. of Discovery.
11 Conf. on 2/22/12, pp. 7:20 – 8:9.] Beyond that, ADE also produced key documents
12 relating to the salaries and duties for each of Rexroat's counterparts, not just the
13 individuals she identified in Requests 5-9. [Exh. 9, Belanger Decl. ¶¶ 5-8, 14-15.]
14 Many of the documents produced are not stored in ADE's personnel files. [*Id.*]

15     Rexroat's repetitive arguments for ADE to search its computer system must be
16 denied. Doc. 65, pp. 19-39. For the same reasons ADE articulated previously, an
17 electronic search to reconstruct relevant portions of the five personnel files Rexroat
18 requested would be extremely time-consuming and would not produce information that
19 is relevant to this case.

20     **Request 10** asked ADE to produce all other documents relating to Rexroat's
21 employment, including job performance, awards and discipline. Subject to reasonable,
22 good-faith objections, ADE produced Rexroat's salary information from HRIS,
23 information from the Closed Hire Packet relating to Rexroat's hire, Rexroat's PDQ file,
24 and Jan Brite's supervisor file. In addition, Billie Belanger and Jan Brite searched their
25 computers for additional documents that should have been in the Closed Hire Packet
26 and/or supervisor file to ensure completeness. [Exh. 9, Belanger Decl. ¶¶ 5-15; Exh. 12,
27 Brite Decl. ¶ 10.] Additional documents that were located electronically were produced
28 in native format and paper form. [*Id.*] Rexroat reasserts her argument that ADE must

1  conduct an electronic search of its computer system to comply with Rule 34.  Doc. 65, p.
2  40 (cross-referencing arguments at pp. 17-19.)  Her request lacks specificity and fails to
3  establish what additional information ADE failed to produce and the relevance of that
4  information.  Rexroat's demands must be denied.

5  **Request 11** asked ADE to produce documents relating to Rexroat's EEOC
6  Charge.  Subject to its objections on the grounds that Rexroat is seeking information for
7  the Title VII claim the Court dismissed, ADE produced documents it submitted to the
8  EEOC or received from the EEOC for the charge that was dismissed.  Rexroat failed to
9  articulate what information ADE failed to provide in response to this request.  Doc. 65,
10 pp. 41-42.  To the extent ADE withheld any responsive information, such as position
11 statement drafts, ADE listed them on its privilege log.  [Exh. 3, Bacalzo Decl. ¶ 4.]

12 **Request 12** asked ADE to produce all employee handbooks it gave to Rexroat.
13 ADE did not give an employee handbook to Rexroat.  However, ADE produced the
14 requested policies in native format and paper form.  [Exh. 9, Belanger Decl. ¶ 16.]
15 Rexroat raises no substantive argument for the Court to address.  Doc. 65, p. 43.

16 **Request 13** asked ADE to produce all documents that support Rexroat's
17 compensation at ADE, including salary, bonuses, and commissions.  Subject to its
18 objections, ADE provided all reasonably available, responsive documents.  [Exh. 9,
19 Belanger Decl. ¶¶ 14-15.]  Rexroat raised no substantive arguments for the Court to
20 address.  Doc. 65, p. 44.

21 **Requests 14 and 15** asked ADE to produce all documents relating to benefits
22 provided to Rexroat, Shea Padilla, Stephanie Hahn, Ruth Kerr, James Wojcik and Jason
23 Wojcik.  Benefits are unrelated to salary.  Rexroat and her counterparts, including the
24 named individuals, are entitled to the same group of benefits regardless of their
25 differences in salary.  The actual benefits received are directly related to the benefits
26 elections each employee makes at open enrollment.  ADE does not manage the benefits
27 plans for employees and an employee's elections are not maintained by ADE.  [Exh. 9,
28

1 Belanger Decl. ¶ 18.] Rexroat raised no substantive arguments for the Court to address.
2 Doc. 65, pp. 43-46.

3      **Request 16** asked ADE to produce documents relating to every complaint,
4 charge, lawsuit or claim alleging gender discrimination, discriminatory pay, and
5 disparate treatment from January 1, 2007 to the present. ADE responded that, other than
6 Rexroat's action, there were none relating to alleged violations of the EPA. Rexroat
7 raised no substantive argument for the Court to address. Doc. 65, p. 47.

8      **Request 17** asked ADE to produce all documents relating to Rexroat's duties.
9 Subject to its objections, ADE produced Rexroat's PDQs and the job posting that was
10 used to advertise the job. ADE's Human Resources maintains the official PDQ in paper
11 form. [Exh. 9, Belanger Decl. ¶¶ 5, 8.] Each time a PDQ is changed by a supervisor, the
12 PDQ should be signed by the chain of command and the employee, and placed in Human
13 Resources' PDQ file. [*Id.*, ¶ 8.] Rexroat argues that ADE should have searched its
14 computers and produced electronic versions of Rexroat's PDQs in native format. Doc.
15 65, p. 47. ADE does not track changes to a PDQ over time so ADE would not be able to
16 produce draft electronic versions of Rexroat's PDQ. [Exh. 10, Mendez Decl. ¶ 4.] An
17 electronic search for Rexroat's PDQ would produce only the final forms and the
18 properties. Rexroat fails to request and fails to establish the relevance of the PDQ's
19 properties. Thus, Rexroat's request for additional information should be denied.

20      **Request 18.** Rexroat made no argument. Doc. 65, p. 48.

21      **Request 19** asked ADE to produce documents relating to ADE's salary
22 requirements for newly hired employees. Rexroat incorporated her arguments regarding
23 ADE's responses to Requests 1 (ADE's policies) and 13 (Rexroat's salary.) Doc. 65, p.
24 49. The Court should deny Rexroat's request for additional information because she
25 fails to articulate what specific and relevant information ADE failed to produce. Even
26 without a specific request from Rexroat, ADE produced its key documents reflecting the
27 starting salary and salary increases for Rexroat and each of her counterparts. She is not
28 entitled to anything more.

1   **Request 20** asked ADE to produce documents relating to ADE's special entrance
2   rate designation for newly-hired employees. This request fails to make a specific request
3   for relevant information. It is difficult to ascertain what information Rexroat requested
4   ADE to produce. Still, ADE produced applicable hiring and compensation policies,
5   (which include the definition of special entrance rate.) A special entrance rate is
6   anything above the minimum of the salary range for the position's grade and
7   classification, which Rexroat and her counterparts received. In addition, ADE produced
8   a chart containing the salary history of Rexroat and each of her counterparts, and
9   correspondence between ADE and those individuals regarding their salary at the time of
10  hire. [Exh. 9, Belanger Decl. ¶¶ 5-6, 14-17.] Rexroat argues that ADE failed to provide
11  electronic copies of documents differentiating between a Special Entrance Rate and a
12  Special Recruitment Rate, but on its face, Rexroat's Request 20 makes no mention of a
13  "Special Recruitment Rate". ADE fully complied with this request. The Court should
14  deny Rexroat any additional discovery under Rule 34.

15    **C. Rexroat is Not Entitled to Any Additional, Post-Discovery Depositions.**
16    Rexroat requests a second deposition of former ADE employee, James Wojcik;
17  the deposition of ADE employee, Terry Mendez; and a second Rule 30(b)(6) deposition.
18  Doc. 60, p. 17. The Court must deny all of Rexroat's requests because she failed to
19  diligently pursue discovery to ensure discovery would be complete by March 16, 2012.

20     **1. James Wojcik should not be subjected to a second deposition.**
21    Rexroat's counsel noticed the deposition of James Wojcik for March 9, 2012 at
22  1:00 p.m. Mr. Wojcik was served with page one of a subpoena during the evening on
23  March 7, 2012. Mr. Wojcik asked Rexroat's counsel to reschedule the deposition to the
24  following week, because being out of the office on March 9, 2012 would be a hardship
25  for him. Mr. Wojcik was told the deposition could not be rescheduled. He did not
26  receive page two of the subpoena, which set forth his right to object to the subpoena.
27  Mr. Wojcik rearranged his entire schedule and appeared for his deposition on March 9,
28  2012. [Exh. 13, Wojcik Decl. ¶¶ 1-9.]

10

1    ADE's counsel was able to accommodate the date and time Rexroat's counsel
2 selected, but counsel provided advanced written and verbal notice that she had medical
3 treatment scheduled for 4:00 p.m. and would have to leave no later than 3:15 p.m.
4 ADE's counsel requested the deposition to begin earlier, if necessary. Rexroat's counsel
5 declined to start earlier. During the morning of March 9, ADE's counsel verbally
6 reminded Rexroat's counsel that she needed to leave for a 4:00 p.m. medical treatment
7 but she located an alternate route and could stay until 3:30 p.m. [Exh. 3, Bacalzo Decl.
8 ¶ 5; Exh. 14, March 6, 2012 letter, p. 3, ¶ 3 and enclosed e-mail.]

9    Rexroat's counsel, Michael Zoldan started the deposition one-half hour late at
10 1:27 p.m., and concluded at 3:27 p.m. Different counsel, Zachary Price, took the
11 deposition of Stephanie Hahn during the morning on March 9, 2012. Mr. Zoldan's
12 failure to start Mr. Wojcik's deposition on time cannot be justified. Mr. Wojcik and
13 ADE's counsel were prepared to start the deposition at 1:00 p.m. If Mr. Wojcik's
14 deposition had started on time, Rexroat's counsel would have had two and one-half
15 hours of examination time, which is in line with the 2-3 hours Rexroat's counsel allotted
16 for that deposition. [Exh. 3, Bacalzo Decl. ¶ 6; Exh. 13, Wojcik Decl. ¶ 8; Exh. 15,
17 February 15, 2012 E-mail, p. 2; Exh. 16, Dep. Tr. of James Wojcik, pp.1-4, 89; Exh. 17,
18 Dep. Tr. of Stephanie Hahn, pp. 1-4, 87.]

19    Court leave is required to take a second deposition of a witness in a case. Rule
20 30(a)(2)(A)(ii), Fed. R. Civ. P. Leave should be denied for several reasons. First,
21 Rexroat's counsel failed to make full use of the two and one-half hours he had to depose
22 Mr. Wojcik. Counsel started the deposition late and wasted time asking Mr. Wojcik
23 about computers and Facebook friends, instead of focusing on Mr. Wojcik's duties and
24 salary at ADE. [Exh. 13, Wojcik Decl. ¶ 11.] Second, Rexroat's counsel gave no regard
25 to the hardship caused to Mr. Wojcik in appearing for the deposition. Rule 45(c)(1),
26 Fed. R. Civ. P., requires counsel to take reasonable steps to avoid imposing an undue
27 hardship or expense on the subject of a subpoena. Rexroat provided Mr. Wojcik less
28 than two days' notice of his deposition. Because Mr. Wojcik did not receive page two of

1  the subpoena, he rescheduled and rearranged all of his obligations to appear for his
2  deposition on March 9, 2012.  Understandably, Mr. Wojcik is absolutely opposed to
3  giving a second deposition.  [Exh. 13, Wojcik Decl. ¶ 10.]  Third, ADE's counsel
4  proceeded with the deposition even though she learned during a break that a family
5  member had experienced a life-threatening medical emergency and had been taken by
6  ambulance to a local hospital.  [Exh. 3, Bacalzo Decl. ¶ 7.]  Everyone except Rexroat's
7  counsel was committed to finishing Mr. Wojcik's deposition on March 9, 2012 within
8  the time allotted.  Under these circumstances, the Court should deny Rexroat's request to
9  take a second deposition of James Wojcik.

**2.  Rexroat failed to plan for Terry Mendez's Deposition.**

11  Reasonable notice is required under Rule 30(b)(1), Fed. R. Civ. P.  One week
12  before the close of discovery, Rexroat noticed the deposition of ADE employee, Terry
13  Mendez, for the afternoon of the last day of discovery, March 16, 2012.  The notice of
14  deposition was filed while the parties were conducting a deposition in this case.  ADE's
15  counsel was scheduled to be off work on March 16, 2012 for personal, medical reasons.
16  On March 14, 2012, ADE's counsel personally informed Rexroat's attorneys Mr. Zoldan
17  and Mr. Price that the reasons she would not be able to accommodate a deposition on
18  March 16 had changed.  Counsel disclosed that a member of her family was terminally
19  ill and she expected to be with her family on March 16.  [Exh. 3, Bacalzo Decl. ¶¶ 7, 11;
20  Exh. 18, Notice of Deposition; Exh. 19, March 14, 2012 letter, pp. 1-2.]

21  The Court gave the parties nine months to complete discovery.  Yet, with one
22  week remaining before the discovery cut-off, Rexroat still had not disclosed Ms. Mendez
23  as a witness, had not determined the availability of ADE's counsel or Ms. Mendez, and
24  had not served Ms. Mendez with a subpoena or arranged a waiver of service with ADE's
25  counsel.  In addition, the parties were scheduled to be in depositions all day, every day
26  from March 8 through March 15, 2012.  [Exh. 3, Bacalzo Decl. ¶¶ 9-10; Exh. 19, March
27  14, 2012 letter, pp. 1-2.]  Thus, Rexroat failed to plan adequately to ensure she could
28  complete all discovery by March 16, 2012.  She also failed to provide ADE, its counsel

1  and Ms. Mendez adequate time to prepare for the deposition before discovery closed.

2  Rexroat's failure to plan does not create an emergency for ADE or the Court to

3  accommodate. Rexroat cannot establish very good cause for a post-discovery deposition

4  of Ms. Mendez. The Court should deny her request to depose Terry Mendez.

**3.  A second Rule 30(b)(6) deposition cannot be justified where Rexroat's counsel demanded all three designees to attend the deposition, counsel examined only one witness for approximately three hours, and spent nearly six hours on breaks.**

8  Rexroat squandered her opportunity to complete the Rule 30(b)(6) deposition on

9  March 15, 2012. ADE designated three witnesses, Jan Brite, Debbie Jackson and Billie

10 Belanger. [Exh. 14, March 6, 2012 letter.] Ms. Brite is Rexroat's supervisor; Ms.

11 Jackson was head of ADE's Human Resources at the time Rexroat was hired; and Ms.

12 Belanger became head of ADE's Human Resources January 2011 when Ms. Jackson left

13 ADE. [*Id.*] Rexroat's attorneys demanded that all three witnesses remain at the

14 deposition the entire day, and they refused to cover designated subjects with Jan Brite at

15 her regularly-scheduled deposition on March 13, 2012. [Exh. 3, Bacalzo Decl. ¶ 12;

16 Exh. 23, Dep. Tr. of Jan Brite, pp. 1-4, 202.] Despite hardships for Ms. Brite and Ms.

17 Jackson, ADE agreed to Rexroat's demands in order to complete discovery by the March

18 16, 2012 cut-off. [Exh. 3, Bacalzo Decl. ¶ 13; Exh. 12, Brite Decl. ¶¶ 6-7; Exh. 20,

19 Jackson Decl. ¶ 4.]

20  ADE was ready to start the deposition at 9:00 a.m. [Exh. 3, Bacalzo Decl. ¶ 14.]

21 Mr. Hall didn't start the deposition of Billie Belanger's deposition until 9:14 a.m. [Exh.

22 21, Dep. Tr. March 15, 2012, pp. 1-4.] Mr. Hall took a break from 10:24 a.m. to 11:40

23 a.m. [Exh. 21, Dep. Tr. March 15, 2012, p. 86:24.] The parties broke for lunch at 1:23

24 p.m. and the deposition testimony never resumed. [Exh. 3, Bacalzo Decl. ¶ 15; Exh. 21,

25 Dep. Tr. March 15, 2012, p. 151:24.] Rexroat's attorneys claim they were unable to

26 continue the deposition because they needed time to assess the "magnitude and amount

27 of documents" ADE produced with its Fourth Supplemental Disclosure Statement. [Exh.

28 21, Dep. Tr. March 15, 2012, pp. 151:25 – 152:8; 154:7 – 155:1.] Mr. Zoldan refused to

1  bring the documents to the conference room to discuss with ADE's counsel.  [Exh. 21,
2  Dep. Tr. March 15, 2012, pp. 160:14 – 162:23.]  Mr. Zoldan said he would continue to
3  assess the documents and come back to state how much time they needed before
4  resuming the deposition.  [*Id.*]

5        ADE's counsel and three witnesses continued to wait for the deposition to
6  resume.  Twice ADE's counsel asked the office receptionist to let Mr. Zoldan know
7  counsel would like to speak with him.  [Exh. 3, Bacalzo Decl. ¶ 16.]  Around 4:15 p.m.,
8  Michael Zoldan announced the deposition would resume shortly—it didn't.  [Exh. 3,
9  Bacalzo Decl. ¶ 17.]

10       Nearly two hours later, at approximately 5:45 p.m., a woman told two individuals
11 who were waiting in Mr. Hall's office lobby, "Mr. Hall will be with you shortly," and
12 they were ushered upstairs where the attorneys' offices are located.  [Exh. 3, Bacalzo
13 Decl. ¶ 18; Exh. 12, Brite Decl. ¶ 9; Exh. 20, Jackson Decl. ¶ 5.]  ADE's counsel and
14 witnesses had been sitting for hours and waiting for the deposition to resume.  With two
15 people now waiting for Mr. Hall, it was apparent that would not be the case.  ADE's
16 counsel, Ms. Belanger, Ms. Jackson and Ms. Brite packed up their belongings and
17 started to leave.  Mr. Hall came down the office stairs with Tracy Rexroat at
18 approximately 6:00 p.m. and pretended he was ready to resume the deposition (even
19 though two people were waiting for him upstairs).  [Exh. 3, Bacalzo Decl. ¶ 20.]  After
20 ADE's counsel and witnesses left, Mr. Hall went back on the record and made the self-
21 serving claim that the Defendant had "walked out" of the deposition.  [Exh. 21, Dep. Tr.
22 March 15, 2012, pp. 170:17 – 172:20.]

23       Ms. Belanger easily could have explained that ADE's March 15 Fourth
24 Supplemental disclosures consisted of ADE's misconduct policy and documents relating
25 to Rexroat's counterparts Joe Epperson and Janice Bilan, which ADE located earlier that
26 week.  ADE produced the documents in native format and paper form.  [Exh. 9, Belanger
27 Decl. ¶ 24 and documents at Tabs a-d.]  ADE produced its employee misconduct policy
28 for the years 1997 and 2007 based on an agreement reached at the parties' March 7, 2012

1 discovery dispute conference. [Exh. 22, Tr. of March 7, 2012 Conf., pp. 24:24 – 26:18.]
2 Rexroat had requested ADE's discipline policy in her Rule 34 Request 1(a). ADE does
3 not have its own discipline policy. [Exh. 9, Belanger Decl. ¶ 16.] The misconduct
4 policy was the closest responsive document.

5 Throughout the litigation, ADE has produced similar documents, even though
6 Rexroat had not requested them. *None* of Rexroat's Rule 34 Requests even mention Joe
7 Epperson or Janice Bilan or the types of documents disclosed. As the Court can see,
8 none of these documents are particularly complex or informative to justify a four and
9 one-half hour delay of three attorneys of record. ADE's disclosures were timely made
10 *before* the March 16, 2012 Court-ordered deadline to supplement all discovery. Doc. 29,
11 ¶ 3. ADE's Fourth Supplemental Disclosures did not *prevent* Rexroat from completing
12 the Rule 30(b)(6) deposition on March 15, 2012, and the disclosures do not justify a
13 second deposition.

14 Rexroat also argues that she is entitled to a second Rule 30(b)(6) deposition
15 because Billie Belanger was not prepared for her testimony. Rexroat failed to establish
16 that Ms. Belanger was unprepared or unable to testify regarding any matter for which
17 ADE designated her a Rule 30(b)(6) witness. Rexroat's counsel insisted on having all
18 three designated witnesses at the deposition in the event one witness was unable to
19 answer questions. [Exh. 3, Bacalzo Decl. ¶ 12.] Ms. Belanger had the narrowest
20 designations because she has been head of ADE's Human Resources only since January
21 2011. [Exh. 9, Belanger Decl. ¶ 20; Exh. 14, March 6, 2012 letter.] If there was
22 something Rexroat's counsel believed Ms. Belanger was unable to answer, Ms. Jackson
23 was available from 9:00 a.m. to 6:00 p.m. [Exh. 12, Brite Decl. ¶ 8; Exh. 20, Jackson
24 Decl. ¶ 3.]

25 Rexroat's counsel never asked Ms. Belanger why she did not specifically prepare
26 for the deposition. If he had, Ms. Belanger would have told him that she was prepared to
27 testify regarding the designated subjects because of her extensive involvement with
28 virtually every aspect of ADE's defense of this action. [Exh. 9, Belanger Decl. ¶ 21.]

15

1  Ms. Belanger spent approximately 85 hours in direct communication with ADE's
2  counsel.  [Exh. 3, Bacalzo Decl. ¶ 18.]  Ms. Belanger attended every deposition.  [Exh. 9,
3  Belanger Decl. ¶ 21.]  Ms. Belanger did not need to take additional steps to testify fully
4  and competently on ADE's behalf regarding the designated subjects.  If a witness is fully
5  prepared to testify on the designated subjects, the means by which she became prepared
6  is immaterial.  Rexroat's request for a second Rule 30(b)(6) deposition must be denied.
7        Unlike Ms. Belanger, Mr. Hall was not prepared for the deposition.  He continued
8  to question Ms. Belanger about Rexroat's PDQ (job description), even though Jan Brite
9  was ADE's designee for Rexroat's job duties.  [Exh. 14, March 6 letter, p. 2, # 4; Exh.
10 21, Dep. Tr. March 15, 2012, pp. 12:18 – 21:6.]  Mr. Hall stated, "It's a little tough
11 because we don't apparently know who drafted the PDQ.  So --"  [Exh. 21, Dep. Tr.
12 March 15, 2012, pp. 20:12-13.]  Two days earlier, Jan Brite, testified that she had written
13 Rexroat's PDQ and she described the process.  [Exh. 23, Dep. Tr. of Jan Brite, pp. 86:2-
14 12; 163:15 – 167:4.]
15        Rexroat casts many aspersions, but she fails to demonstrate that she was diligent
16 about completing the Rule 30(b)(6) deposition before March 16, 2012.  *Johnson*, 975
17 F.2d at 607-08 (a motion to modify a scheduling order deadline tests the diligence of the
18 party seeking the modification).  Scheduling Orders must be taken seriously.  *Janicki*
19 *Lodging Co. v. Mateer,* 42 F.3d 561, 566 (9th Cir. 1994).  Rexroat cannot demonstrate
20 how her three attorneys of record were unable to finish the Rule 30(b)(6) deposition on
21 March 15, 2012.  Because Rexroat fails to establish good cause, let alone very good
22 cause, for a second Rule 30(b)(6) deposition, the Court should deny her request.
23 **III.   Sanctions Against ADE and/or Its Counsel Cannot Be Justified.**
24        Rexroat seeks sanctions against ADE pursuant to Rule 37(d) for an alleged failure
25 to comply with Rule 30(b)(6).  Doc 60, pp. 11-13.  Rexroat failed to establish ADE's
26 violation of Rule 30(b)(6) or Rule 37(d).  Rexroat's Rule 30(b)(6) notice of deposition
27 contained very broad subjects for examination.  For example, ADE was asked to
28 designate an individual to provide "General testimony regarding Plaintiff's employment

1  with Defendants (sic)", and "Testimony regarding ADE employees' compensation
2  and/or salary." [Exh. 24, Notice of Dep. Rule 30(b)(6).] Despite Rexroat's obligation to
3  "describe with reasonable particularity the matters for examination," ADE in good faith
4  designated three individuals to provide testimony "about information known, or
5  reasonably available" to ADE on each of the subjects in the Rule 30(b)(6) deposition
6  notice. [Exh. 14, March 6, 2012 letter.]
7       Rexroat argued that Billie Belanger did not specifically prepare for her testimony,
8  but she failed to establish that Ms. Belanger was, in fact, unprepared and unable to
9  testify regarding any of the designated subjects. In addition, Rexroat's counsel made no
10  attempt whatsoever to examine Ms. Brite or Ms. Jackson on any of the designated
11  subjects, even though they insisted that all three designees remain at the deposition to
12  ensure that all of their questions were answered. [Exh. 3, Bacalzo Decl. ¶¶ 19, 21.]
13  Rexroat provided the Court no basis for awarding sanctions against ADE for the Rule
14  30(b)(6) deposition.
15       Rexroat also failed to establish a basis for sanctions under Rule 26(g) and Rule
16  37(d). Rexroat cannot demonstrate that ADE's responses to Rexroat's Rule 34 requests
17  were improper under the Federal Rules of Civil Procedure. ADE produced documents,
18  including ESI, with its responses. Rexroat expected more ESI, but ADE does not
19  maintain electronic copies of most of the information requested, such as Rexroat's
20  personnel file. Rexroat cannot articulate what information she believes ADE failed to
21  produce in response to each Rule 34 request or the relevance of that information. The
22  Court cannot compel ADE to produce information that Rexroat never requested. Thus,
23  Rexroat's request for sanctions against ADE and its counsel are baseless and must be
24  denied.

25  **IV.   Conclusion.**
26       For the foregoing reasons, ADE requests the Court to DENY Rexroat's Motion to
27  Compel and DENY Rexroat's Motion for Sanctions.
28  / / /

17

RESPECTFULLY SUBMITTED this 2nd day of May, 2012.

                Thomas C. Horne
                Attorney General

                s/Rachel M. Bacalzo
                Rachel M. Bacalzo
                Assistant Attorney General
                Attorneys for Defendant State of
                Arizona, Department of Education

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 2nd day of May, 2012, to:

Cameron Hall
Michael Zoldan
Zachary Price
Hall & Chelle, LLC
7400 E. Pinnacle Peak Road, Suite 204
Scottsdale, Arizona  85255
Attorneys for Plaintiff

 s/Rebecca Warinner
Attorney General Secretary

#2668898