**THE STROJNIK FIRM L.L.C.**
**ATTORNEYS AT LAW**
**ESPLANADE CENTER III  SUITE 700**
**2415 East Camelback Road**
**Phoenix, Arizona 85016**
**(602) 510-9409**

PETER K. STROJNIK, ESQ.
AZBN026082,CABN242728
strojnik@skplaw.com

*Attorney for Plaintiff Tracy Rexroat*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TRACY REXROAT, an Arizona resident, ) | NO.  2:11-cv-01028-PGR |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S REPLY TO RESPONSE TO** |
| ) | **MOTION TO COMPEL DISCOVERY** |
| vs. ) | |
| ) | |
| ARIZONA DEPARTMENT OF ) | |
| EDUCATION; STATE OF ARIZONA, ) | |
| STATE BOARD OF EDUCATION, ) | |
| ) | |
| Defendants. ) | |

## <u>INTRODUCTION</u>

Before this honorable Court is a vast discovery dispute that encompasses several written discovery requests and three depositions.   For the Court's convenience, Ms. Rexroat respectfully requests the Court focus on two issues that are encompassed in the briefs:

1.  <u>Whether Defendant may lawfully terminate the Wojcik deposition pursuant to Rule 30(d)(3) because of Defendant's counsel's medical appointment;</u>

2.  <u>Whether Ms. Rexroat may reconvene the Rule 30(b)(6) deposition because only one of three designees appeared, and the sole attending designee was woefully unprepared and grossly uninformed.</u>

**As to Issue No. 1**, Defendant terminated the deposition of James Wojcik because its counsel had to attend a medical appointment[1]. Pursuant to Rule 30(d)(3), a party may only terminate a deposition on the basis of annoyance, embarrassment or oppression. Attending a medical appointment does <u>not</u> fall within these categories, and Defendant never filed a Motion to Terminate which is the only procedural means to terminate a deposition. <u>Warfield</u>, *infra*. Consequently, Ms. Rexroat's examination of Mr. Wojcik was <u>limited to two (2) hours</u>. Ms. Rexroat's complete examination of Mr. Wojcik is enormously salient to her case because he is one of the two male counterparts performing the same job but earning $20,000.00 more.

Defendant defends their unlawful termination of the deposition on the misleading ground that the completion of the examination constitutes a "second deposition". This characterization is a rudimentary attempt to mislead the Court. Ms. Rexroat wants to complete her examination; <u>not</u> to conduct a second deposition.

**As to Issue No. 2**, Defendant designated three persons to testify at the 30(b)(6) deposition and the areas in which they would testify, but only one of them appeared for the deposition. Exhibit 2. The sole designee that actually appeared was woefully unprepared and astonishingly uninformed as to Defendant's own stated policies. In addition, Defendant's designee could only testify as to her personal knowledge as opposed to the State's knowledge.

---

[1] This was not the first time counsel's medical appointments have obstructed the progress of this case. There have been ten (10) separate occasions, and three in the week surrounding depositions in this case. On <u>March 2, 2012</u>, counsel had to cut short a conference call due to a <u>medical appointment</u>. <u>See</u> Exhibit 1 ("***I must conclude the call so that I can get to a medical appointment***") (emphasis supplied). On <u>March 9, 2012</u>, counsel unlawfully terminated a deposition due to a <u>medical appointment</u>. <u>See</u> Exhibit 2 ("***I must leave by 3:15 p.m. to make a 4:00 p.m. medical appointment on March 9***") (emphasis supplied). On <u>March 16, 2012</u>, counsel refused to schedule a deposition at any time of the day due to a <u>medical appointment</u>. <u>See</u> Exhibit 3 ("***I am not able to cancel my medical treatment that day***") (emphasis supplied).

_Alliance_, _infra_.  By her own admission, the sole attending designee conceded she did <u>not</u> prepare for the deposition:

> Q.  Can you tell me what you did today, what you did to prepare for today's deposition?
>
> A.  **For today's deposition, nothing.**

Exhibit 4 at 10:13-20 (30(b)(6) deposition transcript).  The designee's woeful lack of preparation was clearly reflected in her testimony.  For example, the designee could not testify as to Plaintiff's Position Description Questionnaire because she had not talked to anyone, reviewed any documents or investigated.  <u>Id</u>. at 17:22-25.  The designee also admitted that she "would have to look at that PDQ to confirm" Plaintiff's job responsibilities thereby demonstrating her lack of preparation.  <u>Id</u>. at 18:4-5.  In an Equal Pay Act case, Plaintiff's job responsibilities are at the top of the relevance list so they can be compared to her male counterparts' job responsibilities.  The designee admitted that she did <u>not</u> have knowledge as to many of the 30(b)(6) topics and the other no-shows would be more knowledgeable.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  <u>ARGUMENT AND SUPPORTING LAW</u>

**A.**  **<u>Counsel's Medical Appointment Is Not a Proper Basis to Terminate a Deposition</u>**

Rule 30(d)(3) (_formerly (d)(4)_), Federal Rules of Civil Procedure states in relevant part:

> At any time during a deposition, the **_deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party_**.

(emphasis supplied).  "Rule 30(d)(4) is the only authority allowing the interruption of a deposition."  <u>Warfield v. Gardner</u>, No. CV-04-0974-JAT (D. Ariz. 08/03/2006); <u>Perrigon v.</u>

Bergen Brunswig Corp., 77 F.R.D. 455, 460-61 n. 4 (N.D. Cal. 1978); see also Holston v. Debanca, CV-09-2954-KJM-DAD (E.D.Cal. 03/09/12) (*a party may only terminate a deposition when it is "conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party"*) (emphasis supplied); Kent v. Cummings, No. CV-09-1616-JWS (D.Ariz. 06/28/2010) (same).

Here, Defendant misplaces the onus onto Ms. Rexroat by arguing she must demonstrate good cause to complete her examination. This is incorrect. The **onus is on Defendant** to demonstrate why its termination of the Wojcik deposition was appropriate pursuant to Rule 30(d)(3). Defendant contends the termination of the deposition was appropriate because counsel had a medical appointment. While Ms. Rexroat respects counsel's health privacy, the scheduling of a medical appointment does <u>not</u> constitute the unreasonable annoyance, embarrassment or oppression required to terminate a deposition pursuant to Rule 30(d)(3). Defendant also failed to file a Rule 30(d)(3) Motion or make any attempt to reconvene the deposition despite Ms. Rexroat providing three alternative dates all falling before the discovery cut-off. <u>See</u> Exhibit 5 ("*[T]he fact remains that Mr. Wojcik's deposition was terminated early, making it necessary to continue his deposition on a later date. We are available to do so as follows…March 14…, March 15…, March 16*") (emphasis supplied)[2]. Defendant's attempt to escape its improper termination of the Wojcik deposition by suggesting the deposition should have been started earlier in the day is disingenuous because another deposition was scheduled

---

[2] This also demonstrates Ms. Rexroat's attempt to meet and confer prior to the discovery cut-off.

for that morning.[3]  See Doc. 53 (Deposition of Stephanie Hahn); see also Exhibit 2 ("*We will not be able to move Jimmy's deposition start time due to the immediately, proceeding [sic] deposition of Stephanie Hahn*") (emphasis supplied).

### i.    Defendant's Characterization of Ms. Rexroat's Attempt to Complete the Wojcik Deposition as a "Second Deposition" Is An Attempt to Mislead

While Defendant has not provided any valid reasons to unilaterally terminate the Wojcik deposition, Ms. Rexroat's desire to complete the deposition is misleadingly characterized as a "second deposition".  To be clear, counsel for Defendant terminated the deposition two (2) hours into the examination.  Ms. Rexroat has not completed her examination.

### ii.    The Parties Never Entered Into a Rule 29(a) Agreement

Rule 29(a), Federal Rules of Civil Procedure, permits litigants to agree to modifications of deposition scheduling and timing.  The advisory committee note to Rule 29 requires that an agreement must be made before a modification occurs.

Here, counsel for Defendant unilaterally terminated the Wojcik deposition.  Ms. Rexroat never agreed to limit Mr. Wojcik's deposition to two hours.

### iii.    Defendant Should Be Sanctioned Pursuant to Hacket v. Segerblom

In Hackett v. Segerblom, No. 2:06-cv-01081-JCM (D.Nev. 08/02/2007), counsel for Plaintiff terminated a deposition when counsel for Defendant asked the deponent questions concerning lost wages.  Defendant was forced to file a Motion to Compel and for Sanctions to complete the deposition of Plaintiff.  In granting Defendant's motion, the Court noted that it

---

[3] Defendant also points to Plaintiff's counsel starting the deposition 27 minutes late.  However, tardiness does not fit into the Rule 30(d)(3) grounds for termination.  Assuming it did, Plaintiff would gladly only request 6 ½ hours of examination time.

was "*abusive discovery conduct…where a party improperly terminates her deposition, fails to seek relief under Rule 30(d)(4) and unreasonably delays the discovery process.*" (emphasis supplied). The Court continued by admonishing counsel's failure to file a proper motion:

> *After terminating the deposition, Plaintiff's counsel did not move for a protective order under Rule 30(d)(4) even though Defendant's counsel notified her in writing that it was her responsibility to seek relief under the rule…Plaintiff's conduct in this regard has unreasonably delayed resolution of the deposition dispute and the conduct of discovery in this case.*

Id. (emphasis supplied). The Court went on to order the deposition reconvened (even though it was past the discovery cut-off) and ordered fees and costs. Id.

Here, Defendant (and its counsel) should be sanctioned for unilaterally terminating a deposition for a medical appointment, which is not a valid reason pursuant to Rule 30(d)(3), and thereafter failing to file a motion pursuant to Rule 30(d)(3). Although Plaintiff's counsel spent an inordinate amount of time reviewing the applicable deposition transcripts and preparing this Reply, as a courtesy Ms. Rexroat requests the Court sanction Defendant in the form of a $100.00 donation to the United Service Organization in support of our troops.

B. **Ms. Rexroat Should Be Able to Reconvene the 30(b)(6) Deposition Because Only One of Three Designees Showed Up, and That Designee Was Woefully Unprepared and Grossly Uninformed**

[A] party meets its Rule 30(b)(6) burden by **(1)** producing a deponent knowledgeable on the subject matter identified as the areas of inquiry; **(2)** designating more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity; **(3)** preparing a designated witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party; and **(4)** substituting an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry.

<u>Equal Employment Opportunity Commission v. Boeing Co.</u>, No. CV05-03034-FJM (D.Ariz. 04/17/2007); <u>Alexander v. FBI</u>, 186 F.R.D. 137, 141 (D.D.C. 1998); <u>see also</u> <u>Starlight Int'l, Inc. v. Herlihy</u>, 186 F.R.D. 626, 639 (D.Kan. 1989) (*a corporation has "a duty to conscientious, good faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject*") (emphasis supplied); <u>Dravo Corp. v. Liberty Mut. Ins. Co.</u>, 164 F.R.D. 70, 75 (D. Neb. 1995) ("*If the rule is to promote effective discovery regarding corporations, the spokesperson must be informed*") (emphasis supplied). "[T]he duty to testify as to matters known or reasonably available implicitly requires designated persons to review all matters known or reasonably available to them in preparation for a Rule 30(b)(6) deposition. <u>Boeing</u>; <u>United States v. Taylor</u>, 166 F.R.D. 356, 362 (D.N.C. 1996); <u>Alliance v. District of Columbia</u>[4], 437 F. Supp. 2d 32, 37 (D.D.C. 2006) ("*By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity*") (emphasis supplied).

Here, Defendant designated three persons to testify on its behalf, which concedes the fact that more than one person was required to provide knowledgeable responses on behalf of Defendant, to wit:

ADE designates **[1] <u>Jan Brite</u>**, to provide general testimony regarding Plaintiff's job duties and performance and the general process by which Plaintiff was hired. In addition, **[2] <u>Debbie Jackson</u>**, who was head of ADE's Human Resources from

---

[4] On too many occasions, Defendant's sole attending designee testified only as to her personal knowledge as opposed to Defendant's knowledge. <u>See</u> <u>e.g.</u> Exhibit 4 at 16:18-19 ("To my knowledge, yes"); <u>Id.</u> at 14:22 ("To my knowledge it would be Jan Brite"); Id. at 15:23-24 ("To my knowledge…").

the time Plaintiff was hired through December 2010 can provide general testimony regarding the process by which Plaintiff was hired, and the general categories of information that ADE Human Resources maintains regarding Plaintiff's employment. **[3] Ms. Billie Belanger**, who has served as head of ADE's Human Resources since January 1, 2011, can testify regarding the general categories of information that ADE Human Resources currently maintains regarding Plaintiff's employment.

Exhibit 2 (emphasis supplied). However, underline{only one of the designees showed up}! Exhibit 4 at 2-4. Defendant's designation of three persons and only producing one person not only demonstrates that at least 2/3 of the selected topics could not be answered, but it also rises to the level of a failure to appear. See Rule 37(d) (failure to attend own deposition). And pursuant to this District's law, Defendant must present the other two designees for deposition on behalf of the Defendant. See Boeing, *supra* ("*substituting an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry*") (emphasis supplied).

       **i.**    **The Sole Attending Designee Conceded She Did Not Prepare for the Deposition**

Q.   Can you tell me what you did today, what you did to prepare for today's deposition?

A.   **For today's deposition, nothing.**

Q.   You didn't review any documents? You did not meet with your attorney? I am not asking the substance of meetings, but you didn't meet with attorneys, review documents, study or prepare, do anything at all?

A.   **Not for this deposition, no.**

Exhibit 4 (emphasis supplied). The sole attending designee's testimony reflected her lack of preparation. For example, Plaintiff's counsel asked Ms. Belanger a question relating to Ms. Rexroat's PDQ (Position Description Questionnaire), which is a document that describes

the employment duties for Ms. Rexroat.  <u>See</u> Exhibit 6 (Rexroat PDQ).  In response, Ms. Belanger testified that she had <u>not</u> reviewed Ms. Rexroat's PDQ and that she "would have to look at that PDQ" to answer the question.  <u>See also</u> Exhibit 4 at 20:1-4 (Belanger unable to answer question as to who drafts and reviews PDQs); <u>Id</u>. at 21:11-16 (Belanger unable to confirm whether there were prior versions of Plaintiff's PDQ).

To make matters worse, Ms. Belanger was aware that one of the designations was "policies, practices of the organization" and that the PDQs of the State Supervisors "fall within the policies or practices of the organization."  <u>Id</u>. at 29:15-23.  Still, Ms. Belanger was so unprepared to answer these questions and advised that one of the other non-attending designees could answer these questions.  <u>Id</u>. at 30:1-3.

Ms. Belanger's lack of knowledge was directly caused by her lack of preparation:

```
Q.   Did you review anything for the deposition today or
     otherwise regarding plaintiff's unit and what the
     policies and procedures applicable to that unit would
     be?

A.   I did not review anything to prepare for the
     deposition, no.
```

Exhibit 4 at 80:24-81:13 (emphasis supplied).  <u>Ms. Belanger was also grossly misinformed</u>.  Some foundation is required.  The two male counterparts in this action who are earning $20,000.00 more per year than Ms. Rexroat were given a "special entrance rate".  This "special entrance rate" is an initial salary given to a new hire at an amount between the mid and

top salary of the particular salary grade range.[5]  <u>See</u> Exhibit 7 ("*The Personnel Rules permit a candidate to be hired at a rate greater than the midpoint of the range ("special entrance rate") if justified by the applicant's unusual and outstanding experience, education and ability, …*") (emphasis supplied).  But Ms. Belanger testified incorrectly.  In response to what a "special entrance rate" is, she testified "that a special entrance rate is anything above the minimum salary for that grade range."  Exhibit 4 at 78:12-13.  This is incorrect as demonstrated by Exhibit 7.  Ms. Belanger's misinformation is understandable, however, because counsel for Defendant designated another designee (Debbie Jackson who failed to appear) to testify about "ADE's compensation/salary policies and practices."  Exhibit 2.

### ii.    The Sole Attending Designee Also Conceded That the Other Designees Could More Adequately Answer Specific Questions

The designee's inability to answer questions at the deposition are plentiful.  On more than five score occasions, she conceded that one of the other non-attending designees could more adequately answer specific questions.  An example is given for the Court's convenience.  Plaintiff's counsel asked Ms. Belanger whether all State Supervisors (Plaintiff is a State Supervisor) have the same job description.  This is obviously an extremely salient point since the Equal Pay Act requires that male counterparts perform substantially similar jobs.  In response, Ms. Belanger testified that she could not answer but one of the other three (non-attending) designees could answer that question:

---

[5] For example, if the grade range is $30,000.00 to $50,000.00, the "special entrance rate" begins at the mid-range of the salary grade range at $40,000.00.  Ms. Belanger was so grossly misinformed that she believed the "special entrance rate" begins at the lowest point of the grade range.

```
I cannot answer specifically how many current State
Supervisors there are without looking into that.  The
supervisor [Jan Brite] could answer that.
```

Exhibit 4 at 30:4-12.

## II. <u>CONCLUSION</u>

Plaintiff met and conferred with Defendant on the record and via e-mail all before the discovery cut-off.  *Supra*.  Ms. Rexroat understands the general reluctance to order the Parties to reconvene the 30(b)(6) and Wojcik depositions at this late stage, but Ms. Rexroat should not be penalized (and Defendant should not profit) for Defendant's lack of preparation, failure to appear, and abrupt termination of a deposition for a medical appointment.  For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion to Compel <u>and for sanctions</u>.


RESPECTFULLY SUBMITTED this 13th day of July, 2012.


*/s/ Peter Kristofer Strojnik*
Peter Kristofer Strojnik (026082)
strojnik@skplaw.com
THE STROJNIK FIRM L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
602 510 9409 (tel)
602 532 7572 (fax)

***Attorney for Plaintiff Tracy Rexroat***