**THE STROJNIK FIRM L.L.C.**
ATTORNEYS AT LAW
ESPLANADE CENTER III  SUITE 700
2415 East Camelback Road
Phoenix, Arizona 85016
(602) 510-9409

PETER K. STROJNIK, ESQ.
AZBN 026082, CABN242728
strojnik@skplaw.com

*Attorney for Plaintiff Tracy Rexroat*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TRACY REXROAT, an Arizona resident,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>ARIZONA DEPARTMENT OF EDUCATION; STATE OF ARIZONA, STATE BOARD OF EDUCATION,<br><br>　　　　　　　　　　　Defendants. | NO.  2:11-cv-01028-PGR<br><br>**MOTION TO STRIKE MATERIALLY FALSE DECLARATIONS OF JANET BRITE AND DEBBIE JACKSON**<br><br>**and**<br><br>**TO HOLD JANET BRITE, DEBBIE JACKSON AND ATTORNEY BACALZO IN CONTEMPT OF COURT (Rule 56(h))**<br><br>(Oral Argument Requested) |

**MOTION TO STRIKE**

Plaintiff Tracy Rexroat, by and through undersigned counsel, hereby respectfully moves to strike the materially false Declarations of Janet Brite and Attorney General employee Debbie Jackson, which were used to support Defendant's Statement of Facts [Doc. 83], pursuant to Rule 56(h), Federal Rules of Civil Procedure.  These <u>Declarations</u> are <u>materially false</u> and are

-1-

clearly contraverted by Defendant's own prior statements, personnel documents, EEOC documents, testimony and business cards. Plaintiff further moves to hold Janet Brite and Attorney General employees Debbie Jackson and Attorney Rachel Bacalzo in contempt of court for the presentation of these <u>materially false declarations</u>.

WHEREFORE, Plaintiff respectfully requests the materially false Declarations of Janet Brite and Debbie Jackson be stricken, and Ms. Brite, Ms. Jackson, and Attorney Bacalzo be held in contempt of Court for presentation of these false declarations to the Court. This Motion is more fully supported by the below Memorandum of Points and Authorities, which by this reference is incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. <u>INTRODUCTION</u>**

In Defendant's recent Motion for Summary Judgment [Doc. 82] and supporting Statement of Facts [Doc. 83], Defendant attempted to mislead the Court by withholding very salient information and also made materially false statements to the Court under oath. While it is understandable the Court would be skeptical that such an attack on the integrity of this Court could be perpetuated by the State, Ms. Rexroat is confident the below discussion clearly demonstrates the unequivocal material falsity of the Declarations.

To understand the materiality of the false statements, a discussion of what Defendant is attempting to prove is constructive. The basic premise of Defendant's argument in this lawsuit is three-fold. ***First***, Defendant wants the Court to believe that State Supervisors (which Plaintiff and her male comparators are) must have "considerable knowledge, education, experience and training" in each of the several, wide-ranging areas they manage. Defendant

concludes that since Plaintiff does not have the "considerable knowledge, education, experience and training" in the areas that her male comparators manage, then Defendant argues the work performed is different. This conclusion is based upon the false Declaration of Janet Brite, which is easily contraverted by reviewing Defendant's own personnel documents showing that no State Supervisor has knowledge, education, experience or training in the majority of areas they supervise. **Second**, Defendant wants the Court to believe that certain male State Supervisors are paid as low as Plaintiff and that certain female State Supervisors are paid as much as the male comparators in this case. In attempting to make this showing, Defendant presented false declarations that claim certain persons are State Supervisors when they are not and never were. These persons were interns and CTSO advisors, which are very different than State Supervisors. The falsity of the sworn statements is shown by the business cards and personnel documents for these individuals. **Third**, Defendant presents Declarations swearing under oath that a "special entrance rate" is an initial salary that is *any* salary between the low point and mid-point of the salary range. Defendant parlays this false statement to make it appear that Plaintiff received a "special entrance rate". However, the sworn declarations are unequivocally contraverted by Defendant's EEOC Position Statement, its own personnel rules, and its prior sworn testimony. A "special entrance rate" is a salary *above* the mid-point of the salary range.

In addition, Ms. Brite made false statements to the Court in an attempt to convince the Court that one of the male comparators, Jason Wojcik, has greater "responsibility" than Plaintiff in this lawsuit by falsely stating that Jason Wojcik has a supervisory role. As the Court is aware, one of the factors to determine whether Plaintiff and her male comparators

perform "equal work" is to examine whether they have similar responsibility. Ms. Brite falsely stated that Jason Wojcik has a supervisory role to make the Court believe he has greater responsibility. However, this false statement is contraverted Defendant's own personnel documents unequivocally showing that Jason Wojcik did <u>not</u> supervise anyone.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>False Statements Regarding "Special Entrance Rate" and "Special Recruitment Rate"</u>

Debbie Jackson, who is a <u>co-worker of Attorney Bacalzo at the Attorney General's office</u> (Doc. 83-13 at ¶2), signed her sworn Declaration in support of Defendant's Motion for Summary Judgment. [Doc. 83-13]. In Paragraph 9 of the Declaration, Ms. Jackson defines a "special *recruitment* rate" as initial "salaries above the mid-point in the [salary] range." <u>Id.</u> at ¶9. In Paragraph 10 of the Declaration, Ms. Jackson defines a "special *entrance* rate" as "any salary that is above the minimum, but not more than mid-point of the established salary range." <u>Id.</u> at ¶10. In clearer terms, Ms. Jackson swore under oath that a "special *entrance* rate" is an initial salary between the low-point and mid-point of the salary range (0-50), and a "special *recruitment* rate" as any salary above the mid-point of the salary range (51-100).

The material falsity of these sworn statements is proven by Defendant's own testimony and its prior statements. As a preliminary matter, a special *recruitment* rate does <u>not</u> exist. <u>See e.g.</u> Doc. 86-10 at 186:21-23 (*supervisor Janet Brite testifying that she has no knowledge of what a special recruitment rate is*). This is a concocted term used to justify Jason Wojcik's, James Wojcik's and Bruce Watkins' significantly higher salaries. A special *entrance* rate is a salary that is above the mid-point of the salary range. It is <u>not</u> a salary below the mid-point as

Ms. Jackson falsely states under oath. Below is the evidence showing the unequivocal falsity of the declarant's sworn statements:

In Defendant's EEOC Position Statement, it truthfully noted that:

The Personnel Rules permit a candidate to be **_hired at a rate greater than the midpoint of the range ("special entrance rate")_** if justified by the applicant's unusual and outstanding experience, education and ability, or based on the availability of qualified applicants or the applicant's earning history. A.A.C. R2-5-303(H).

See Exhibit 1 (Defendant EEOC Position Statement) (parentheses in original) (emphasis supplied). As is shown by Defendant's prior statement, a "special entrance rate" is a rate greater than the mid-point of the salary range, not below the mid-point as the declarant falsely states.

Ms. Jackson's definition of a "special *entrance* rate" is also shown to be false by making a reasonable inference based on Defendant's prior statement that "[w]ith his [Jason Wojcik's] salary history … a special entrance rate of $58,500.00 was approved." Id. A special entrance rate of $58,500.00 is well above the mid-point of the $36k-$66k salary range for Mr. Wojcik's position, which confirms that a special entrance rate is above the mid-point of the salary range. Accordingly, Ms. Jackson's sworn statement if false.

In Ms. Jackson's zeal, she parlayed this false definition of a "special entrance rate" to make it appear that Defendant preferably treated Ms. Rexroat by awarding her a "special entrance rate". In Paragraph 18 of her Declaration, Ms. Jackson swears under oath that Plaintiff was awarded a "special entrance rate", but this sworn statement is based upon Ms. Jackson's false statement as to what a "special entrance rate" is.

**B. <u>False Statements in Classifying Non-State Supervisors as State Supervisors</u>**

In an effort to make the Court believe that some male State Supervisors earned as less as Plaintiff and some female State Supervisors earned as much as Plaintiff's male comparators, Ms. Brite falsely testified that many State employees are State Supervisors. They are not as unequivocally demonstrated below.

In Paragraphs 24, 28-29, and 31-32 of her Declaration, Ms. Brite swears under oath that the following persons are State Supervisors: Sheri Cone, Ryan Hamilton, Scott Soldat, Oleg Schvets, and Tyler Grandil. These are false sworn statements. For example, Ryan Hamilton's business card expressly contraverts Ms. Brite's sworn statement, to wit:



<u>See</u> Exhibit 2 (relevant business cards). This complicated business card simply means that Mr. Hamilton was a CTSO advisor, <u>not</u> a State Supervisor as the declarant falsely states under oath. <u>See</u> e.g. Doc. 91 at ¶23. The word "State Supervisor" is nowhere to be found on

Mr. Hamilton's business card. If Mr. Hamilton was a State Supervisor as Ms. Brite falsely states, his business card would look like this:



Id. As is clear by Mr. Wojcik's business card, it unmistakably states he is a "State Supervisor". Mr. Hamilton's business card does <u>not</u>. Furthermore, Defendant's personnel documents show that Mr. Hamilton was actually an <u>intern</u> before he became a <u>CTSO advisor</u>, to wit:



See Exhibit 3 (relevant Personnel Action Forms). Mr. Hamilton was later promoted to the position of CTSO advisor, to wit:



Id. As is clear, Mr. Hamilton is <u>not</u> and <u>never was</u> a State Supervisor. The business cards and personnel documents for Sheri Cone, Tyler Grandil, Scott Soldat, and Oleg Schvets

similarly confirm the falsity of the declarant's sworn statements. Exhibit 2-3. For the sake of efficiency, a review of Exhibits 2 and 3 hereto unequivocally demonstrates the falsity of Ms. Brite's sworn statement. See also Doc. 91 at ¶¶22, 73(a)-(i).

**C. False Statements Regarding "Knowledge, Education, Experience and Training"**

Defendant also bases a materially false statement on Ms. Brite's Declaration at Paragraph 28, to wit:

> 28. Education Program Specialists who work in Career Pathways, particularly the State Supervisors, must have considerable knowledge, education, experience and training in the content areas of their assigned programs. Without that, the programs would suffer. As Career Pathways' Program Director, Jan Brite attempted to fill in temporarily for the Health Careers Education State Supervisor. Because Ms. Brite did not have a background in health care education, she was unable to perform the essential job duties of that position. Just to keep the programs afloat, Ms. Brite relied heavily on

This statement goes to Defendant's equal "skill" argument in this lawsuit. In her zeal, the State's employee makes the fantastic statement that State Supervisors "must have considerable knowledge, education, experience and training in the content areas of their assigned programs." In a literal sense (as opposed to a facetious sense)…*unbelievable*. To ascertain the falsity of this statement, which is paramount to the Court's analysis of this motion and this case, a review of the State Supervisors' "assigned programs" and their <u>actual</u> knowledge, education, experience and training is necessary. To avoid Defendant back-tracking on its false statements or massaging the truth as it has done in this action, the below review will be based on Defendant's own personnel documents.

According to Defendant's Doc. 83 Statement of Facts, Jason Wojcik oversees the following program areas: Air Transportation, Construction Technologies, Cabinet Making, Design Technologies, Architect, Mechanical Technologies, Electrical Technologies, Electrical and Power Transmission Technologies, Electrical Systems, Air Conditioning, Auto Body Repair, and Diesel Engine Repair.

Doc. 83 at ¶15.  In accordance with Defendant's materially false statement, Mr. Wojcik must have "considerable knowledge, education, experience and training" in each of these listed areas.  A review of Jason Wojcik's employment application, which was produced by Defendant, shows that <u>he does not have anywhere close to *any* knowledge, education, experience OR training</u> in any of his assigned programs.  His sole experience and education is obtaining a two-year AA degree in general education, an two-year AA degree in an undisclosed area of study from the Arizona Architectural Institute, and working for one construction company and one HOA.  <u>See</u> Exhibit 4 (Jason Wojcik employment application); <u>see also</u> Doc. 86-10 at 200:15-17 ("He had considerable industry experience in both drafting and in construction").  In her deposition, Ms. Brite confirms that Jason Wojcik does <u>not</u> have any experience in automotive repair and several other areas that he oversees.  <u>See e.g. Id.</u> at 200:19-21 (*Brite testifying that Jason Wojcik did not have any experience in automotive*); <u>Id.</u> at 200:25-201:5 (*Brite confirming Jason Wojcik's sole experience is in construction and drafting, and possibly "experience with electrical"*).  Accordingly, Jason Wojcik has no experience, much less "considerable knowledge, education, experience and training", in Air Transportation, Cabinet Making, Design Technologies, Mechanical Technologies, Electrical Technologies, Electrical and Power Transmission Technologies, Electrical Systems, Air Conditioning, Auto Body Repair, and Diesel Engine Repair.  Ms. Brite's sworn statement is materially false and literally unbelievable.

As a State Supervisor, James Wojcik (one of the male comparators) oversaw Agriculture Business Management, Fire Service, Law, Public Safety, Security and Welding Technologies.  Doc. 83 at ¶27.  Ms. Brite swears under oath that as a State Supervisor, James Wojcik must have "considerable knowledge, education, experience and training" in each of these assigned programs.  A review of James Wojcik's employment application shows that he does <u>not</u> have *any* (much less considerable) knowledge, education, experience **OR** training in Fire Service, Law, Public Safety, Security or Welding

Technologies. Exhibit 5 (James Wojcik employment application). Rather, James Wojcik's sole background is in agricultural education, and while this background is respectable, he lacks any background, much less "considerable knowledge, education, experience and training" in his several remaining assigned areas. Id. Ms. Brite's sworn statement is false.

**D. Grossly Misleading Statement That Jason Wojcik Had a Supervisory Role**

Ms. Brite swears under oath that "[i]n addition to their regularly-assigned responsibilities, the following State Supervisors have supervisory responsibilities: Stephanie Hahn, Ruth Kerr, Shea Padilla and Jason Wojcik." Doc. 83-1 at ¶40. Ms. Brite's sworn statement is contraverted by Defendant's own personnel documents, to wit:

**SUPERVISOR LINKS AND CODES**          Please Attach An Updated Org Chart
Will this position supervise?   ☐ Yes   ☒ No

See Exhibit 6 (Jason Wojcik Perosnnel Action Form). In actuality, Jason Wojcik did not receive this "supervisory" role until 2011, which was well after his initial hire and which does not explain his higher salary prior to this alleged "supervisory" role.

### III.   ARGUMENT AND SUPPORTING LAW

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith …, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed.R.Civ.P. 56(h). Rule 56(h) was formerly Rule 56(g). See Advisory Committee Notes ("Subdivision (h) carries forward subdivision (g) with three changes").

Here, Janet Brite's and Debbie Jackson's declarations were submitted in bad faith because they were false as proven by Defendant's own prior statements, documents and

-10-

testimony. The statements were materially false and presented to the Court in an attempt to prove the elements of this lawsuit.

Ms. Brite swears under oath that each State Supervisor, including James Wojcik and Jason Wojcik, must have "considerable knowledge, education, experience and training" in each of the areas to which they are assigned, but the actual facts demonstrate that neither Wojcik brother comes anywhere close to having a background in the wide-ranging areas they supervise, much less "considerable knowledge, education, experience and training." The material falsity of Ms. Brite's declaration in this respect is shown by the Wojciks' employment applications and Ms. Brite's own deposition testimony. Accordingly, the Declarations should be stricken from the record and Janet Brite, Debbie Jackson, and Attorney Bacalzo should be held in contempt of court.

Ms. Jackson swears under oath that a "special entrance rate" is an initial salary below the mid-point of the salary range and parlayed this false statement to make it appear that Ms. Rexroat was given preferential treatment in receiving a "special entrance rate". However, Ms. Jackson's sworn statement is false and contraverted by Defendant's own EEOC position statement. Accordingly, the Declarations should be stricken from the record and Janet Brite, Debbie Jackson and Attorney Bacalzo should be held in contempt of court.

Ms. Brite swears under oath that several State employees are State Supervisors in a devious attempt to mislead the Court into believing some men earn as less as Ms. Rexroat and some women earn as much as Ms. Rexroat's male comparators. However, these State employees are not and never were State Supervisors. Accordingly, the Declarations should be stricken from

the record and Janet Brite, Debbie Jackson and Attorney Bacalzo should be held in contempt of Court.

These false sworn statements coupled with Attorney Bacalzo's attempt to suborn perjury from a witness in this action call into question the veracity of any representations made by Defendant and its employees.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Declarations of Janet Brite and Debbie Jackson be stricken, and Ms. Brite, Ms. Jackson and Attorney Bacalzo be held in contempt of Court. For the Court's convenience, a proposed form of Order is attached.

RESPECTFULLY SUBMITTED this 5th day of October, 2012.

*/s/ Peter Kristofer Strojnik*
Peter Kristofer Strojnik (026082)
strojnik@skplaw.com
THE STROJNIK FIRM L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
602 510 9409 (tel)
602 532 7572 (fax)

***Attorney for Plaintiff Tracy Rexroat***