J. Scott Rhodes – 016721
srhodes@jsslaw.com
Kerry A. Hodges – 025547
khodges@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Attorneys for Rachel Bacalzo and the Office
of the Arizona Attorney General*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Rexroat, an Arizona resident,<br><br>Plaintiff,<br><br>vs.<br><br>Arizona Department of Education;<br>State of Arizona, State Board of<br>Education,<br><br>Defendants. | No. 2:11-cv-01028-PGR<br><br>**RESPONSE TO PLAINTIFF'S<br>MOTION TO DISQUALIFY<br>COUNSEL** |

Rachel Bacalzo and the Office of the Arizona Attorney General hereby oppose

Plaintiff's Motion to Disqualify Counsel (the "Motion") (Doc. 89).

### Overview

Plaintiff moves to disqualify Ms. Bacalzo for conduct that allegedly occurred

during a deposition-preparation meeting with Stephanie Hahn. Based on Ms. Hahn's

declaration (the "Hahn Declaration"), Plaintiff alleges that Ms. Bacalzo attempted to

"suborn perjury" of Ms. Hahn; "intimidated, pressured and argued with" Ms. Hahn;

"attempted to influence" Ms. Hahn; and "demeaned and disparaged Plaintiff's former

counsel" to Ms. Hahn. Mot. at 1. These allegations are untrue, and both their timing

and the substance of the Hahn Declaration suggest that the Motion was tactically

4205944v1(56766.12)

motivated to do nothing more than harass Ms. Bacalzo and attempt to deny Defendant its counsel of choice. The law does not condone disqualification motions filed for such improper purposes. *Alexander v. Superior Court In & For Maricopa County*, 141 Ariz. 157, 165, 685 P.2d 1309, 1317 (1984) ("To call for the disqualification of opposing counsel for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated." (internal quotation marks omitted)); *see also In re Cnty. of L.A.*, 223 F.3d 990, 996 (9th Cir. 2000) ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."); Pmbl. ¶ 20, Ariz. R. Prof'l Conduct (warning that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons").

Furthermore, even if her allegations were true (which they are not), Plaintiff has not, and cannot, point to any harm or prejudice that she has suffered as a result of Ms. Bacalzo's alleged misconduct. Ms. Hahn emphatically maintains that she told the truth at her deposition, notwithstanding Ms. Bacalzo's alleged advice, and she is now pursuing her own Equal Pay Act claim against the State of Arizona in a separate lawsuit (represented by the same attorney as Plaintiff).[1] *Cf. Richards v. Holsum Bakery, Inc.*, CV09-00418-PHX-MHM, 2009 WL 3740725 at *6 (D. Ariz. Nov. 5, 2009) (recognizing that courts grant "disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation"). Moreover, to speculate, as Plaintiff does, that Ms. Bacalzo's alleged conduct has tainted this entire proceeding would require the Court to ignore Ms. Bacalzo's sworn testimony and to presume her guilt, contrary to the law. *See, e.g.*, *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1423-24 (N.D. Ill. 1997) ("This Court

---

[1] Case No. 2:12-cv-01299-FJM at Doc. 5.

4205944v1(56766.12)

1  will not presume reputable counsel have winked or wholly ignored their

2  responsibilities under the Code, at least when their representations are to the contrary.

3  To give any lesser credence to counsel's representations, and to the bar's capacity for

4  self-regulation, seems both cynical and unwise.").  At most, then, the Court is faced

5  with conflicting declarations concerning Ms. Bacalzo's conduct and no harm to

6  Plaintiff from her continued involvement in this case.

7      For both reasons, the Motion should be denied.

8  **Relevant Facts**

9      Ms. Bacalzo has been a licensed, practicing attorney for seventeen years, the

10  past seven of which as an Assistant Attorney General in the Employment Law

11  Section of the Civil Law Division of the Arizona Attorney General's Office.

12  [Declaration of Rachel Bacalzo (the "Bacalzo Declaration"), attached hereto as **Ex.**

13  **A**, ¶ 2.]  Her reputation is very important to her, and she has always striven to

14  maintain the highest standards of ethics and integrity in both her personal and

15  professional conduct.  [*Id.*]  She has never been disciplined by the State Bar of

16  Arizona (or any other state's lawyer-regulatory authority), and she has never been

17  disqualified or sanctioned by any court, state or federal, in Arizona or elsewhere.

18  [*Id.*]  It was, therefore, both surprising and deeply upsetting to her to read the

19  allegations of unethical conduct directed against her in Plaintiff's Motion and the

20  supporting Hahn Declaration.  [*Id.*]

21      ***None*** of the allegations of unethical conduct in the Motion or the Hahn

22  Declaration are true.  [*Id.* ¶ 3.]  Ms. Bacalzo never tried to "intimidate" Ms. Hahn in

23  any way during their February 29, 2012 meeting.  [*Id.*]  She never "demeaned" or

24  "disparaged" Plaintiff's former counsel.  [*Id.*]  She never advised Ms. Hahn to perjure

25  herself or to deviate from the truth in her testimony.  [*Id.*]  She never tried to

26  "convince" Ms. Hahn that her testimony was untrue.  [*Id.*]  She never tried to

3

"pressure" Ms. Hahn into testifying in accordance with her "argument" or her "version" of anyone's job responsibilities.[2]  [*Id.*]

To the contrary, during their February 29, 2012 meeting, Ms. Bacalzo emphasized to Ms. Hahn the importance of telling the truth at her deposition.  [*Id.* ¶ 4.]  She told Ms. Hahn that she would be under oath, subject to the penalty of perjury, and that she was required to tell the truth.  [*Id.*]  Part of Ms. Bacalzo's standard advice to every witness she meets with in advance of a deposition, hearing, or trial is something akin to: "There is no right or wrong answer—there is only the truth."  [*Id.*]  She gave Ms. Hahn that advice.  [*Id.*]

Ms. Bacalzo and Ms. Hahn did discuss the possibility that she could be asked at her deposition whether she believed the State Supervisors' jobs within the Arizona Department of Education were the same.  [*Id.* ¶ 5.]  As Ms. Bacalzo recalls, she told Ms. Hahn that this question was a legal issue in the case and that she did not have to agree with one conclusion or the other.  [*Id.*]  They discussed the similarities and differences between various State Supervisors' jobs.  [*Id.*]  Ms. Bacalzo explained to Ms. Hahn the importance of sticking to the facts concerning the similarities and differences between the jobs, as opposed to stating her opinion on whether the jobs are the same or different.  [*Id.*]  She recalls telling Ms. Hahn that stating her opinion, one way or the other, could subject her to cross-examination on the factual similarities or differences between the jobs and might make it appear as if she had not been completely honest during her deposition.  [*Id.*]  She recalls telling Ms. Hahn

---

[2]    There are a number of other statements in the Motion and the Hahn Declaration that are untrue.  Ms. Bacalzo is not responding specifically to each of those misstatements because they are irrelevant to a resolution of the Motion and, thus, her responses would serve only to distract from the core issues before the Court. Suffice it to say that she vehemently denies every allegation of unethical and unprofessional conduct leveled against her in the Motion and the Hahn Declaration. [Bacalzo Decl. ¶ 3 n.1.]

1    that sticking to the facts would avoid that possibility and allow the lawyers to present

2    arguments about whether those facts mean the jobs are the same or not under the law.

3    [*Id.*]

4          Ms. Bacalzo's recollection of Ms. Hahn's views on the similarities and

5    differences among the State Supervisors' jobs, as she described her views during

6    their February 29, 2012 meeting, is consistent with the testimony she gave on those

7    topics during her deposition.[3]  [*Id.* ¶ 6.]  On that basis, Ms. Bacalzo agrees with Ms.

8    Hahn's statement that she did not perjure herself during her deposition.  [*Id.*]

9          The first time anyone suggested to Ms. Bacalzo that she had engaged in any

10   unethical or inappropriate conduct during the February 29, 2012 meeting with Ms.

11   Hahn occurred seven months later, on September 7, 2012, after the parties had filed

12   their cross-motions for summary judgment, in the last paragraph of a letter to her

13   from Ms. Hahn's counsel, Peter Strojnik, which stated: "I have never witnessed the

14   unprofessionalism with which you have conducted yourself in this case *including*

15   *your unethical deposition prep of Ms. Hahn*."  [*Id.* ¶ 7; Ex. 2 to Bacalzo Decl.

16   (emphasis added).]   Mr. Strojnik's letter was sent in response to Ms. Bacalzo's

17   August 24, 2012 letter, which maintained that Plaintiff's disclosures of damages

18   amounts and calculations in a supplemental disclosure statement received on July 27,

19   2012 (more than four months after the close of discovery) were untimely, and invited

20   Plaintiff to submit any information she would like Ms. Bacalzo's clients to consider

21   in evaluating whether the disclosures were timely, substantially justified, or harmless.

22   [*Id.* ¶ 7; see also Ex. 3 to Bacalzo Decl.]  In that letter, Ms. Bacalzo specifically

23   stated: "Our intent is to evaluate whether the parties may be able to resolve this issue

24   instead of asking the Court to decide it for us."  [*Id.* ¶ 7; Ex. 3 to Bacalzo Decl.]  In

25

26          [3]  Examples of Ms. Hahn's testimony on those topics are attached as Exhibit 1
     to the Bacalzo Declaration.

                                              5

response, on September 7, 2012, Mr. Strojnik made the above-quoted oblique allusion to the alleged "unethical deposition prep of Ms. Hahn." [*Id.* ¶ 7; Ex. 2 to Bacalzo Decl.]

One week later, on September 14, 2012, Mr. Strojnik wrote a second letter to Ms. Bacalzo, in which he made the same or similar allegations as those presented in the Motion and the Hahn Declaration, allegations which had never been raised or even suggested before Ms. Bacalzo raised the issue of late disclosure and invited a dialogue between the parties to try to resolve it. [*Id.* ¶ 7; Ex. 4 to Bacalzo Decl.] No such allegations appear in Plaintiff's Motion for Status Conference (Doc. 73) or her Reply in support of same (Doc. 75), both of which were filed on June 8, 2012, ***after*** Mr. Strojnik was retained by Ms. Hahn to pursue the same Equal Pay Act claim as Plaintiff. [Doc. 73 at 2.] No such allegations appear in Plaintiff's Reply in support of her Motion to Compel Discovery (Doc. 79) filed on July 13, 2012. No such allegations appear in Plaintiff's Motion for Summary Judgment (Doc. 84) or supporting Statement of Facts (Doc. 85), both filed on August 31, 2012. And no such allegations appear ***in any document filed in Ms. Hahn's separate lawsuit to date***. [See Docs. 1-17 in Case No. 2:12-cv-01299-FJM.]

## Argument

### 1.    General Disqualification Standards.

"Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander*, 141 Ariz. at 161, 685 P.2d at 1313.[4] Arizona courts "view with suspicion" disqualification motions based on an "appearance of impropriety," *Gomez v. Superior Court*, 149

---

[4] Arizona law governs the Motion. *Cnty. of L.A.*, 223 F.3d at 995 (stating that federal courts "apply state law in determining matters of disqualification" and that they "follow the reasoned view of the state supreme court when it has spoken on the issue").

4205944v1(56766.12)

Ariz. 223, 226, 717 P.2d 902, 905 (1986), and the burden is on the moving party to establish a "sufficient reason why an attorney should be disqualified from representing his client." *Alexander*, 141 Ariz. at 161, 685 P.2d at 1313. That burden is high, given the potential for abuse with such motions. *See, e.g.*, *Optyl Eyewear Fashion Int'l Corp., v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (noting that disqualification motions are subjected to "particularly strict scrutiny" because of their "potential for abuse"); *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003) ("[B]ecause a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored."); Pmbl. ¶ 20, Ariz. R. Prof'l Conduct (warning that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons").

"Whenever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients." *Alexander*, 141 Ariz. at 161, 685 P.2d at 1313. If the alleged ethical violation is harmless, disqualification is generally not the proper remedy. *See id.* at 165, 685 P.2d at 1317 (quoting with approval *Board of Educ. of New York City v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979) ("[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest of cases."); *Richards*, 2009 WL 3740725 at *6 (recognizing that courts grant "disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation").

**2.    Application to Plaintiff's Motion.**

The Motion should be denied for two independent reasons: (i) the allegations of unethical conduct are untrue and, instead, are being brought to harass Ms. Bacalzo and deny the defendants their counsel of choice; and (ii) even if the Court disagrees,

4205944v1(56766.12)

disqualification still is not the proper remedy because there are conflicting declarations and Plaintiff has not, and cannot, show that she will suffer any harm or prejudice from Ms. Bacalzo's continued involvement in this case.

### A.    The Allegations of Unethical Conduct Are Untrue.

Ms. Bacalzo did not advise, influence, or otherwise attempt to convince Ms. Hahn to commit perjury.  [Bacalzo Decl. ¶ 3.]  Indeed, Ms. Hahn admits in her declaration that Ms. Bacalzo specifically instructed Ms. Hahn "that I should not perjure myself." [Hahn Decl. ¶ 13.]  Ms. Hahn further admits in her declaration that, in fact, she did not commit perjury.  [*Id.* ¶ 5.]

Nor did Ms. Bacalzo engage in any of the other alleged unethical conduct during her meeting with Ms. Hahn on February 29, 2012.  [Bacalzo Decl. ¶ 3.]  To the contrary, Ms. Bacalzo told Ms. Hahn in no uncertain terms to tell the truth during her deposition, and based on the substance of their conversation on February 29, 2012, Ms. Bacalzo believes Ms. Hahn's testimony that she did in fact tell the truth at her deposition.  [*Id.* ¶¶ 4 & 6.]

To the extent Ms. Hahn continues to maintain that Ms. Bacalzo tried to pressure her not to testify truthfully at her deposition, her declaration is not credible. Until seven months after the February 29, 2012 meeting between Ms. Hahn and Ms. Bacalzo, neither Ms. Hahn nor Mr. Strojnik—nor anyone else—ever suggested that Ms. Bacalzo engaged in unethical conduct at the meeting.  The first such allegation came after the parties had filed their cross-motions for summary judgment.  It was made in response to Ms. Bacalzo's invitation to Mr. Strojnik to try to resolve an issue concerning Plaintiff's late disclosure.  [*Id.* ¶ 7.]  Ms. Hahn explains this incredible delay by stating that "[i]t was not until I retained [Mr. Strojnik] that I became comfortable bringing this matter to the attention of the Court."  [Hahn Decl. ¶ 3.] That explanation is incredible.  Ms. Hahn had retained Mr. Strojnik by June 8, 2012,

at the latest.  [Mot. for Status Conference (Doc. 73) at 2.]  The Motion to Disqualify, however, was not filed until September 27, 2012, almost four months later, after Mr. Strojnik had filed several other documents with the Court ***that made no mention of Ms. Hahn's inflammatory allegations***.  Ms. Hahn's explanation for the delay undercuts the credibility of her entire declaration.

In addition, Ms. Hahn has not filed a motion to disqualify Ms. Bacalzo in her *own lawsuit*.  The same arguments for disqualification being made in this case could be made in that case (which is still in its early stages), yet Ms. Hahn has not done so.  If there were any legitimacy to Ms. Hahn's allegations against Ms. Bacalzo, one would expect Ms. Hahn to have immediately sought Ms. Bacalzo's disqualification from her own lawsuit.

The timing of Plaintiff's allegations and the illogic of her explanation for delay both undercut Ms. Hahn's credibility and suggest that Plaintiff has pursued the Motion with the design, intent, and purpose of harassing Ms. Bacalzo and attempting to deny Defendant its counsel of choice.  The Court should not indulge such behavior.  *See, e.g.*, *Corbello v. Devito*, 2:08-CV-00867-RCJ, 2011 WL 3859466 (D. Nev. Aug. 31, 2011) ("Motions to disqualify opposing counsel have indeed become a popular tool of litigators to disrupt, distract, and deprive a party of the counsel of her choice.  Courts have become increasingly suspicious of such motions, especially where they are used as a tool to attempt to destroy the reputation and credibility of opposing counsel for strategic purposes.").

**B.    The Alleged Misconduct, Even If it Had Occurred, Caused No Harm.**

Plaintiff concedes that Ms. Hahn testified truthfully at her deposition.  Further, Ms. Hahn is now pursuing her own Equal Pay Act claim against the State of Arizona.  Plaintiff, thus, cannot show that the alleged misconduct has harmed or prejudiced her

9

in any way. Plaintiff's argument that Ms. Bacalzo's alleged conduct taints the entire proceeding and calls into question the credibility of all the State of Arizona's employees and supervisors in this case is sheer speculation that would require this Court to ignore Ms. Bacalzo's sworn testimony and to presume her guilt, contrary to the law. *See, e.g.*, *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1423-24 (N.D. Ill. 1997) ("This Court will not presume reputable counsel have winked or wholly ignored their responsibilities under the Code, at least when their representations are to the contrary. To give any lesser credence to counsel's representations, and to the bar's capacity for self-regulation, seems both cynical and unwise.").[5]

At most, the Court is left with conflicting declarations as to what happened during the meeting on February 29, 2012, but with an admission by Plaintiff that no harm resulted from the alleged misconduct. Under those circumstances, disqualification is not the proper remedy. *Richards*, 2009 WL 3740725 at *6 (recognizing that courts grant "disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation"); *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F. Supp. 1226, 1245-46 (S.D.N.Y. 1995) (denying motion to disqualify based on "conflicting declarations" and a lack of harm stemming from attorney's allegedly improper payments to nonexpert witness); *see also Kline v. Kline*, 221 Ariz. 564, 573, 212 P.3d 902, 911 (Ariz. Ct. App. 2009) (declining to address allegations of ethical misconduct that did not cause prejudice or reversible error, stating, "We do not sit as a disciplinary tribunal.").

---

[5] Furthermore, the argument is disingenuous because, as noted above, Ms. Hahn has not filed a motion to disqualify Ms. Bacalzo in her own lawsuit. If there were a real risk of case-wide taint, one would expect Ms. Hahn to try to avoid that potential in her own lawsuit in the first instance.

4205944v1(56766.12)

1

**Conclusion**

2          Reputation matters, especially in the legal profession.  One would hope that an

3   attorney would require more than the word of his client before accusing a fellow

4   member of the Bar of advising someone to commit a crime, especially when the

5   client's word is inconsistent with her actions.

6          Ms. Bacalzo holds out hope that the Motion and Hahn Declaration will be

7   withdrawn, and that the bulk of the allegations in those documents are attributable to

8   a simple, albeit painful, misunderstanding.  Regardless, there is no truth to the

9   allegations of unethical conduct against her, and the alleged conduct, in any event,

10  caused no harm or prejudice to Plaintiff.  The Motion, therefore, should be denied.

11         Dated this 15th day of October, 2012.

12

13                                  JENNINGS, STROUSS & SALMON, P.L.C.

14

15                            By   _s/ J. Scott Rhodes_____
                                     J. Scott Rhodes
16                                   Kerry A. Hodges
                                     One East Washington Street, Suite 1900
17                                   Phoenix, Arizona 85004-2554
                                     *Attorneys for Rachel Bacalzo and*
18                                   *the Office of the Arizona Attorney General*

19

20

21

22

23

24

25

26

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2012, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Peter K. Strojnik
Strojnik Firm LLC
2415 E. Camelback Rd., Suite 700
Phoenix, AZ  85016
*Attorney for Plaintiff*

Rachel M. Bacalzo
Office of the Attorney General
1275 W. Washington Street
Phoenix, AZ  85007
*Attorney for Defendant*


*s/ Cris Gentis*

12

4205944v1(56766.12)