**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Rexroat, | )  CIV. 11-1028-PHX-PGR |
| Plaintiff, | )  **ORDER** |
| v. | ) |
| Arizona Department of Education, et al., | ) |
| Defendants. | ) |

Before the Court are Plaintiff's Motion to Disqualify Counsel Due to Suborning Perjury of a Witness (Doc. 89) and Motion to Strike Materially False Declarations of Janet Brite and Debbie Jackson and to Hold Janet Brite, Debbie Jackson and Attorney Bacalzo in Contempt of Court (Doc. 94). The motions are denied for the reasons set forth below.

Plaintiff works as an Education Program Specialist, with the working title "State Supervisor," in the Career Pathways Unit of the Arizona Department of Education ("ADE"). On May 24, 2011, she filed a complaint alleging gender discrimination in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1). She alleges that her male counterparts receive higher salaries for the same work and that her salary is the result of unlawful gender discrimination.

### **Motion to Disqualify**

Plaintiff moves to disqualify Defendant's counsel, Rachel Bacalzo, for conduct that allegedly occurred during a deposition-preparation meeting with Stephanie Hahn on February 29, 2012. Ms. Hahn, like Plaintiff, is employed as a State Supervisor with the ADE. On June 15, 2012, Ms. Hahn filed her own EPA claim. *Hahn v. Arizona Department of Education*,

2:12-cv-01299-FJM. She is represented by Plaintiff's counsel, Peter Strojnik.

Plaintiff alleges that Ms. Bacalzo, in her meeting with Ms. Hahn, "suborned perjury of a witness in this action, intimidated, pressured and argued with a witness, attempted to influence a witness, and demeaned and disparaged Plaintiff's former counsel." (Doc. 84 at 1.) Plaintiff seeks to disqualify Ms. Bacalzo under LRCiv 83.2(e) and the Arizona Rules of Professional Conduct,[1] specifically Ethical Rule 8.4(c), which states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." (*Id.*)

Defendant responds that the allegations of misconduct are untrue and that disqualification would not be an appropriate remedy even if the allegations were true because Plaintiff cannot show that she will suffer prejudice from Ms. Bacalzo's continued involvement in this case. (Doc. 98.) The Court agrees.

To avoid the use of ethical rules for the tactical disqualification of opposing counsel, Arizona law provides that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court*, 141 Ariz. 157, 685 P.2d 1309, 1313 (1984); *see Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 93 P.3d 1086, 1092 (Ariz.Ct.App.2004) ("The rules of professional responsibility are for ethical enforcement and are not designed to be used as a means to disqualify counsel."); *Gomez v. Superior Court*, 149 Ariz. 223, 717 P.2d 902, 905 (1986) (noting that Arizona courts "view with suspicion" motions to disqualify opposing counsel based on a conflict of interest or appearance of impropriety.); *see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) (explaining that disqualification motions should be subjected to "particularly strict scrutiny" because of their

---

[1] Under Rule 83.2(e) of the Local Rules of Civil Procedure, "[t]he 'Rules of Professional Conduct,' in the Rules of the Supreme Court of the State of Arizona, shall apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona."

- 2 -

potential for abuse); *In re Cnty. of L.A.*, 223 F.3d 990, 996 (9th Cir. 2000) ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."). Motions to disqualify therefore "require careful scrutiny of the facts before such a result is permitted." *Security General Life. Ins. Co. v. Superior Court*, 149 Ariz. 332, 718 P.2d 985, 988 (1986). The moving party has the burden of showing that the Court should disqualify an attorney from representing her client. *Alexander*, 685 P.2d at 1313; *Amparano*, 93 P.3d at 1093.

"To preserve the integrity of the judicial system close or doubtful cases should be resolved in favor of disqualification." *Richards v. Holsum Bakery, Inc.*, No. CV09-418-PHX-MHM, 2009 WL 3740725, at *6 (D.Ariz. November 5, 2009) (citing *Faison v. Thornton*, 863 F.Supp. 1204, 1216 (D.Nev. 1993)). However, because of the "great prejudice often associated with an enforced change of counsel, courts applying these standards have granted disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation." *Id.* (quoting *Complaint of Korea Shipping Corp.*, 621 F.Supp. 164, 169 (D.Alaska 1985)). "Whenever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients." *Alexander*, 685 P.2d at 1313.

In support of her motion to disqualify Ms. Bacalzo, Plaintiff has submitted a declaration from Ms. Hahn. (Doc. 89, Ex. 1.) Much of the declaration is characterized by subjective statements such as, "I could tell immediately that [Ms. Bacalzo] was attempting to intimidate me," "It was my general sense that Ms. Balcazo wanted me to testify as she explained the facts to me," and "I felt as though if [sic] I had a choice between agreeing with Ms. Bacalzo's representations or she would continue to argue with me." (*Id.*, ¶ 10.)

Elsewhere, Ms. Hahn attests that Ms. Bacalzo instructed her to answer "I don't remember" if she was asked a question and was unable to remember even "one minor detail of a part of a larger question." (*Id.*, ¶ 13.) She also states that Ms. Balcazo argued with her and pressured her into accepting Ms. Balcazo's views concerning the qualifications and

responsibilities of State Supervisors. (*Id.*, ¶ 14–16.) Ms. Hahn states, however, that she did not commit perjury during her deposition testimony. (*Id.*, ¶ 2.)

In response to Plaintiff's motion, Defendant has provided a declaration from Ms. Balcazo denying all of Ms. Hahn's allegations of unethical conduct. (Doc. 98-1.) She attests that she did not try to intimidate or pressure Ms. Hahn but instead emphasized the importance of testifying truthfully. (*Id.*, ¶ 3.) Ms. Bacalzo further states that, with respect to questions about the qualifications and responsibilities of State Supervisors, she advised Ms. Hahn to stick to the facts and not offer an opinion about the similarities or differences between the various positions, which was a legal question to be argued by the lawyers. (*Id.*, ¶ 5.) Finally, Ms. Bacalzo attests that Ms. Hahn's deposition testimony was consistent with the views she expressed at the February 29 meeting. (*Id.*, ¶ 6; *see id.*, Ex. 1.) Presented with these declarations, the Court finds that Plaintiff falls far short of meeting her burden of showing that opposing counsel violated any ethical rules, let alone that she should be disqualified.

The Court also notes that Plaintiff's motion to disqualify counsel was filed on September 27, 2012, seven months after the February 29 meeting between Ms. Hahn and Ms. Balcazo.[2] During that period, Plaintiff filed numerous documents with the Court, none of which raised allegations of misconduct. Ms. Hahn attests that she felt comfortable raising these allegations only after retaining Mr. Strojnik (Doc. 89, Ex. 1, ¶ 3 ), which occurred some time prior to June 8, 2012 (*see* Doc. 73). However, Plaintiff filed documents after that date without making any reference to Ms. Hahn's allegations. These include Plaintiff's motion for a status conference and reply in support (Docs. 73, 75), Plaintiff's reply in support of her motion to compel (Doc. 79), and Plaintiff's motion for summary judgment and supporting

---

[2] Plaintiff's counsel first raised the issue of the alleged misconduct in a letter to Ms. Bacalzo dated September 7, 2012, following the filing of the parties' summary judgment motions. (Doc. 89-1, Ex. 2.) The letter, which was written in response to a letter from Ms. Bacalzo stating that Plaintiff's disclosure of damages amounts was untimely, accused Ms. Bacalzo of engaging in "unethical deposition prep." (*Id.*)

- 4 -

1  statement of facts (Docs. 84, 85). Further, Ms. Hahn, in her own lawsuit, has not moved to
2  disqualify Ms. Balcazo.

3  Plaintiff filed her motion only after the completion of discovery and the filing of
4  summary judgment motions, and long after the alleged misconduct for which disqualification
5  is sought. She has offered no plausible explanation for this delay, nor has she cited any
6  prejudice resulting from Ms. Bacalzo's continued representation of Defendant.

7  "Where a litigant uses a motion to disqualify as a tool to deprive its opponent of
8  counsel of its choice, especially after substantial preparation of the case for trial has occurred,
9  the court may properly find that the balance of the parties' interests tips sharply in favor of
10 the nonmoving party." *U.S. for Use and Benefit of Lord Elec. Co., Inc. v. Titan Pacific Const.
11 Corp.*, 637 F.Supp. 1556, 1563 (W.D.Wash. 1986); *cf. Corbello v. Devito*, 2:08-CV-00867-
12 RCJ, 2011 WL 3859466 (D.Nev. Aug. 31, 2011) (noting that "[m]otions to disqualify
13 opposing counsel have indeed become a popular tool of litigators to disrupt, distract, and
14 deprive a party of the counsel of her choice"). Here, the balance of the parties' interests tips
15 sharply in favor of Defendant. The case for disqualification is not a close or doubtful one.

16 **Motion to Strike**

17 Citing Rule 56(h) of the Federal Rules of Civil Procedure, Plaintiff asks the Court to
18 strike declarations by Janet Brite, Program Director of the Career Pathways Unit, and Debbie
19 Jackson, former head of Human Resources with the ADE, which were submitted by
20 Defendant in support of its motion for summary judgment. (Doc. 94 at 1.) Plaintiff also
21 requests that the Court hold Ms. Brite, Ms. Jackson, and Ms. Balcazo in contempt. (*Id.*)

22 Defendant acknowledges factual errors in the declarations and has filed corrected
23 declarations and a corrected statement of facts. (*See* Docs. 102–104.) Defendant disputes
24 Plaintiff's contention that other portions of the declarations were untrue.

25 Plaintiff cites as "materially false" the following information allegedly contained in
26 the original declarations: that Plaintiff received a "special entrance rate" when she was hired;
27 that male comparators Jason Wojcik, James Wojcik, and Bruce Watkins received a "special

28

- 5 -

1  recruitment rate"; that each State Supervisor must have considerable knowledge, education, experience, and training in the program areas he or she oversees; and that Jason Wojcik had a supervisory role which contributed to his higher salary. (*See* Doc. 106 at 10.)

The new declarations correct and clarify these issues, and a review of the record shows that Plaintiff's challenges to the veracity of the declarations are meritless. First, Ms. Jackson's corrected declaration, which defines "special entrance rate" as any rate above the minimum of the established pay range (Doc. 103, Ex. B, ¶¶ 9–10), rebuts Plaintiff's allegation that she did not receive a special entrance rate when hired. Next, Plaintiff's allegation that the declarations falsely stated that the Wojciks and Watkins received a "special recruitment rate" is unsupported because the declarations do not contain any such statements. Next, Plaintiff's argument that State Supervisors do not each have considerable knowledge, education, experience, and training in their program areas, is not sufficient to render Defendant's opposing position materially false. (*See* Doc. 102 at 5–10.) Finally, Ms. Brite attested that Jason Wojcik became a supervisor in October 2010. (Doc. 103, Ex. A, ¶ 19.) The fact that Plaintiff disagrees does not make Ms. Brite's declaration materially false.

Under these circumstances, it is unnecessary to strike the declarations. *See Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995) (explaining that "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit"); *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012) ("We caution that newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham."). To the extent that the corrected declarations differ from the originals, the inconsistencies are neither material nor clear and ambiguous enough to justify striking the declarations. *See Van Asdale v. International Game Technology*, 577 F.3d 989, 998–99 (9th Cir. 2009).

Finally, the Court finds that sanctions are unwarranted under Rule 56(h). Plaintiff has

1  offered no evidence that the declarations were submitted in bad faith, nor is such an
2  accusation supported by the record. *See Raher v. Federal Bureau of Prisons*, No. 03:09-cv-
3  0526-ST, 2011 WL 4832574, at *8 (D.Or. October 12, 2011) ("Bad faith in the context of
4  Rule 56(h) requires a deliberate or knowing act for an improper purpose. Affidavit testimony
5  that is materially contradicted by prior deposition testimony alone is not sufficient to show
6  the necessary bad faith under Rule 56(h).").

## Conclusion

8  Plaintiff has failed to offer factual or legal support for her motion to disqualify counsel
9  and her motion to strike.
10  Accordingly,
11  IT IS HEREBY ORDERED denying Plaintiff's Motion to Disqualify Counsel Due
12  to Suborning Perjury of a Witness (Doc. 89).
13  IT IS FURTHER ORDERED denying Plaintiff's Motion to Strike Materially False
14  Declarations of Janet Brite and Debbie Jackson and to Hold Janet Brite, Debbie Jackson and
15  Attorney Balcazo in Contempt of Court (Doc. 94).
16  DATED this 26th day of November, 2012.

Paul G. Rosenblatt
United States District Judge

- 7 -