**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Rexroat, ) | CIV. 11-1028-PHX-PGR |
| Plaintiff, ) | **ORDER** |
| v. ) | |
| Arizona Department of Education, et al., ) | |
| Defendants. ) | |

Before the Court are the parties' motions for summary judgment. (Docs. 82, 84.) The Court held oral argument on December 11, 2012. For the reasons stated herein, the Court grants summary judgment in favor of Defendant.

Plaintiff works as an Education Program Specialist, with the working title "State Supervisor," in the Career Pathways Unit of the Arizona Department of Education ("ADE"). On May 24, 2011, she filed a complaint alleging gender discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1). (Doc. 1.) She claims that her male counterparts receive higher salaries for the same work and that her salary is the result of unlawful gender discrimination.

Defendant contends that Plaintiff cannot establish that her job requirements are substantially equal to those of other State Supervisors. Defendant also argues that any differences in salary are the result of legitimate factors other than sex.

## I.   Summary Judgment Standard

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.   The Equal Pay Act

The Equal Pay Act ("EPA") prohibits an employer from discriminating

> between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to . . . a differential based on any other factor other than sex . . .

29 U.S.C. § 206(d)(1).

To recover under the EPA, therefore, a plaintiff is required to show that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform jobs that require substantially equal skill, effort, and responsibility; and (3) the jobs compared are performed under similar working conditions. *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988); *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999) (stating that an EPA claim requires a showing that "employees of the opposite sex were paid different wages for equal work").

The plaintiff bears the burden of showing that her job was "substantially equal" to a job with a higher pay rate. She accomplishes this by showing "the jobs to be compared have

a 'common core' of tasks, i.e., [that] a significant portion of the two jobs is identical." *Stanley*, 178 F.3d at 1074. Once the plaintiff establishes this "common core of tasks," the inquiry shifts and "the court must then determine whether any additional tasks, incumbent on one job but not the other, make the two jobs 'substantially different.'" *Id.*

If the plaintiff makes a prima facie case of discrimination, the burden of persuasion shifts to the employer, who must show that the wage disparity is permitted by one of the four statutory exceptions to the EPA: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986). "These exceptions are affirmative defenses which the employer must plead and prove." *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 875 (9th Cir. 1982).

## III.  Discussion

The parties agree that State Supervisors, grade level 21, constitute the proper subset for comparing employees' salaries.[1] Plaintiff was hired on June 19, 2007. (Doc. 83, ¶ 11.) Her starting salary was \$40,958. (*Id.*) Her salary as of June 26, 2010, was \$42,333. (*Id.*)

To support her EPA claim, Plaintiff cites as male comparators State Supervisors James Wojcik, Jason Wojcik, and Bruce Watkins. (Doc. 84 at 2.) James Wojcik was hired on June 30, 2007, at a starting salary of \$60,000. (Doc. 83, ¶ 27.) His salary as of June 26, 2010, was \$61,650. (*Id.*) Jason Wojcik was hired on February 2, 2008, at a starting salary of \$58,500. (*Id.*, ¶ 15.) His salary as of June 26, 2010, was \$60,109. (*Id.*) Bruce Watkins was hired on September 17, 2011, at a salary of \$56,000.[2] (*Id.*, ¶ 13.)

---

[1] The salary range for grade 21 positions is \$38,818 to \$66,171. (*See* Doc. 91, Ex. 6.)

[2] Defendant notes that other female State Supervisors receive higher salaries than male State Supervisors, including Plaintiff's male comparators. For example, Kay Schreiber was hired at a salary of \$59,266. (Doc. 83, ¶ 12.) Carol Whitlock was hired at a salary of \$56,000. (*Id.*, ¶ 14.)

Janet Brite has been the Program Director of Career Pathways Unit since 2006. (Doc. 83, Ex. 1, ¶ 2.) She supervises the State Supervisors and offered recommendations regarding the hiring of Plaintiff and the male comparators. Debbie Jackson was the head of Human Resources for the ADE from June 1992 to December 2010. (*Id.*, Ex. 8, ¶ 2.) Billie Belanger is the current Human Resources Manager. (*Id.*, Ex. 3 ¶ 2.) Final hiring decisions within the ADE are made by the Associate Superintendent and reviewed by Human Resources for compliance with ADE policies. (*Id.*, Ex. 8, ¶ 8; Ex. 3, ¶ 6.)

### A.     Plaintiff's prima facie case

To support her burden, Plaintiff must make a showing of substantial equality with respect to each of four criteria: skill, effort, responsibility, and working conditions. *Forsberg*, 840 F.2d at 1414. The parties' principal disagreement concerns the question of skill. Because Plaintiff must satisfy this criterion to establish a prima facie case, the Court will focus on whether the jobs performed by Plaintiff and her male comparators require substantially equal skill. In considering whether jobs require substantially equal skill, the Court takes into account factors such as experience, training, and ability. *See Forsberg*, 840 F.2d at 1415; 29 C.F.R. § 1620.15(a).

State Supervisors are responsible for developing and administering Career and Technical Education ("CTE") programs. (Doc. 83, ¶ 3.) According to Defendant, State Supervisors use their "subject matter expertise" and "content knowledge" to administer the programs they oversee. (Doc. 82 at 4.) Therefore, while State Supervisors "serve similar function such as developing and administering CTE . . . programs, helping provide professional development opportunities to school administrators, and providing technical assistance," the actual job requirements for each supervisor are not substantially equal. (Doc. 82 at 9–10.) According to Janet Brite, "Content knowledge and subject matter expertise in the assigned program areas for which each State Supervisor is responsible is essential to the job duties of providing technical assistance, identifying professional development needs and

evaluating programs." (Doc. 102, Ex. 1, ¶ 6.)

Plaintiff contends that it is a "silly question" to ask whether Plaintiff and her male comparators perform "equal work." (Doc. 84 at 3, 13.) She notes that State Supervisors receive uniform training which provides them with the skills needed to perform nearly 50 duties shared by all State Supervisors. (*Id.* 84 at 7, 11–12.) She asserts that State Supervisor jobs require "equal skills such as communication skills, computer skills, working as a team, providing technical assistance, etc." (*id.* at 8) and that "State Supervisors can adequately perform the jobs of other State Supervisors" (*id.* at 3). According to Plaintiff, Defendant has conceded that "State Supervisor' jobs are interchangeable because they do on-site visits for each other, answer each other's phone calls and answer certification questions, and perform each other's responsibilities as needed." (*Id.* at 8.)

Plaintiff disputes Defendant's contention that State Supervisors are required to have knowledge and experience specific to the content of the programs they administer. (*Id.* at 7–8.) She claims, in fact, that given the number and variety of programs a State Supervisor oversees, it is impossible for a State Supervisor to have expertise in the content of each program. (*See* Doc. 90 at 4–5.)

The record supports Defendant's argument that the jobs performed by Plaintiff and her male comparators do not require substantially equal skill. The advertisements and position descriptions ("PDQ") for State Supervisor positions set forth the knowledge required to perform each job. (*See* Doc. 83, ¶ 56; Doc. 102, Ex. 1, ¶ 5.) Brite attests that "many of the State Supervisor positions have been in place for decades and consistently required content knowledge and skill." (Doc. 102, Ex. 1, ¶ 5.) The PDQ contains a section entitled "Knowledge, Skills, & Abilities," which states that an employee must have "considerable knowledge of the methods and procedures in the area of specialization in which consultative services are to be provided." (Doc. 83, Ex. 3 at 44.)

The posted advertisement for Plaintiff's job indicated that the position required

"[k]nowledge of engineering, bio-engineering technologies, industrial manufacturing and Career and Technical Education Programs" and "[e]ducational/occupational opportunities in the fields of engineering, bio-engineering technologies, industrial manufacturing, teaching methods and techniques, curriculum development and data driven program development, implementation and improvement." (*See* Doc. 83, ¶ 11; *id.*, Ex. 1, ¶ 13, Ex. 3 at 38–39.)

The record shows that different knowledge requirements were required for the jobs held by the other State Supervisors, including Plaintiff's male comparators. For example, Bruce Watkins' position required knowledge of "[m]ethods & procedures in Agriculture Education," "[i]nstructional materials and their availability and applicability to Agriculture Education," and "Agricultural Education and Welding program areas from an occupational perspective." (Doc. 83, ¶ 13; *id.*, Ex. 1, ¶ 16, Ex. 4 at 10–11). Jason Wojcik's job required "considerable knowledge" in Industrial Trades program areas, including Air Transportation, Construction Technologies, Drafting and Design Technologies, Electrical and Power Transmission Technologies, Electrical Systems and Maintenance Technologies, Heating, Ventilation and Air Conditioning, Heavy Equipment Operations, Heavy/Industrial Equipment Maintenance Technologies, and Transportation Technologies. (Doc. 83, ¶ 15; *id.*, Ex. 1, ¶ 20, Ex. 5 at 6, 8.)

The job requirements for female State Supervisors, including Stephanie Han and Ruth Kerr, likewise include content-specific knowledge.[3] Hahn's job required "[k]nowledge of K-12 Education and Early Childhood Education Programs." (Doc. 83, ¶ 6; *id.*, Ex. 1, ¶ 7 & pp. 25–26). Kerr's job required "[k]nowledge of Family and Consumer Sciences Career and Technical Education Programs." (Doc. 83, ¶ 8; *id.*, Ex. 1, ¶ 9, Ex. 2 at 1).

Plaintiff counters that State Supervisors, regardless of the qualifications set forth in their job descriptions, perform at the same *level* of skill. (Doc. 90 at 6–7.) She argues that

---

[3] Kerr and Hahn have filed EPA claims against Defendant. *Hahn, et al. v. Arizona Department of Education*, 2:12-cv-1299-FJM.

level, rather than type, of skill is the proper measurement under the EPA.

Plaintiff's reliance on a distinction between type and level of skill is misplaced. In *Forsberg* the Ninth Circuit held that "[i]n conducting our analysis, we should focus primarily on the relationship between job content and the requisite skills . . . This analysis necessarily requires that we examine the types of skills that each job requires." 840 F.2d at 1415 (citing *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1171 (3d Cir. 1977)); *Horn v. University of Minnesota*, 362 F.3d 1042, 1046 (8th Cir. 2004) ("Because the two positions required different types and degrees of skill and responsibility, they were not 'substantially equal' as required by the Equal Pay Act.").

The extent to which each of the State Supervisor positions requires specialized knowledge is reflected elsewhere in the record, including Plaintiff's deposition testimony, in which she acknowledged that her areas of knowledge and expertise do not overlap with those of her colleagues. (*See* Doc. 83, Ex. 7 (Rexroat Depo. at 32:4–1, 66:20–25, 67:1–21, 71:3–16, 81:1–19, 83:15–17)). Plaintiff also testified that her knowledge in the areas of machining and engineering allowed her carry out her duties as State Supervisor by developing specific CTE programs. (*Id.* at 30:10–25, 31:1–8.)

The record further shows that before being hired for her current position, Plaintiff applied for another job with ADE. The position required a background in agriculture, which Plaintiff did not have. She was not hired. (*Id.* at 31:10–25, 32:1–15.)

Other State Supervisors also testified that content knowledge is necessary to run their programs successfully. Joe Epperson testified that State Supervisor positions are not "interchangeable." (Doc. 83, Ex. 6 at 110:20–25, 111:1–6.) While one State Supervisor could assist another and "fill in for a week or two," his or her contribution would be limited to organizing paper work and ensuring compliance with government rules and regulations. (*Id.* at 111:1–25.) According to Epperson, it would take three years for a State Supervisor without the proper background to be able "to run the program successfully and well." (*Id.* at

112:9–20.)

Stephanie Hahn testified that one of the qualifications for her State Supervisor position was "content knowledge of the subject areas you would be responsible for." (Doc. 83. Ex. 5 at 43:14–21.) Her education and experience in child development qualified her for the position of State Supervisor for Early Childhood Education, Education Professions, and Service-Learning. (*Id.* at 44:1–15.)

Defendant also notes that programs have suffered when ADE has been forced to fill a State Supervisor position with someone who lacked the requisite content knowledge. Janet Brite attempted to fill in temporarily as the Health Careers Education State Supervisor but "could not perform the essential job duties because [she] did not have a background in the health care education field." (Doc. 83, Ex. 1, ¶ 34.) Prior to the creation of the position Plaintiff holds, Joe Epperson administered the industrial manufacturing programs. (Doc. 83, Ex. 1, ¶ 35.) He struggled in the position because he lacked the proper background. (*Id.*)

In her declaration, Brite attests that she "would not make a hiring recommendation if a candidate lacked the required subject matter expertise or experience." (Doc. 83, Ex. 1, ¶ 36.) She notes, for example, that Jason Wojcik applied for the job Plaintiff now holds. During the interview process ADE learned that Wojcik's experience as an engineering manager related to construction rather than engineering. (*Id.*) Therefore Plaintiff, whose background is in engineering, was qualified for the position she holds while Wojcik was qualified for the position he holds in Industrial Trades Education. (*Id.*)

The record clearly shows that the skills required for each State Supervisor position are not substantially equal under the EPA. As discussed above, each position requires education, training, experience, and ability related to the specific programs a State Supervisors oversees. *See Forsberg*, 840 F.2d at 1415. While the State Supervisors share some general administrative tasks, that are many additional tasks, incumbent on one job but not the others, that make the jobs substantially different. *See Stanley*, 178 F.3d at 1074.

Having failed to make a showing of substantial equality with respect to skill, Plaintiff cannot establish a prima facie case of discrimination case under the EPA. *See Forseberg*, 840 F.2d at 1416 ("Because the skills necessary for the two jobs are not substantially equal, we need not analyze whether there is a material issue of fact concerning effort, responsibility, or working conditions.").

### B. Affirmative defense

The Court also finds that Defendant has met its burden of showing that the wage disparity between Plaintiff and her male comparators is permissible under the EPA. Specifically, the Court concludes that the salaries of State Supervisor are based in part on prior salary—a factor "other than sex" under 29 U.S.C. 206(d)(1)(iv).[4]

Salary differences that result from unequal starting salaries "do not violate the Equal Pay Act if the original salary can be justified by one of the four exceptions to the Equal Pay Act." *Hein*, 718 F.2d at 920. In *Kouba*, the Ninth Circuit held that this exception could include prior salary as long as there was "an acceptable business reason" for basing wages on prior salary and the factor was "use[d] reasonably in light of the employer's stated purpose as well as its other practices." 691 F.2d at 876–77. The court is to determine the reasonableness of the defendant's practices in light of its stated business reasons, and must find that the defendant's business reasons "do not reasonably explain its use of the factor before finding a violation of the Act." *Id.* at 878. "The Equal Pay Act entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives." *Id.* at 876; *see also Hein*, 718 F.2d at 921.

If the defendant meets the burden of showing that the pay disparity is based on a

---

[4] Defendant also contends that State Supervisor salaries are the product of the state's merit systems rules, a defense under 29 U.S.C. § 206(d)(1)(ii). (Doc. 82 at 15–16.) Having found that Defendant has satisfied § 206(d)(1)(ii), the Court will not address the merit system issue.

statutory exception, "the employee may prevail by showing that the employer's proffered nondiscriminatory reason is a 'pretext for discrimination.'" *Stanley*, 178 F.3d at 1076 (quoting *Maxwell*, 803 F.2d at 446). The plaintiff "bears the burden of demonstrating a material fact regarding pretext in order to survive summary judgment." *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Defendant has met its burden of showing a nondiscriminatory reason for the salary disparities—namely, ADE's use of earning history as a factor is setting a State Supervisor's starting salary. Plaintiff does not carry her burden of showing that Defendant's use of salary history was a pretext for discrimination.

The record shows that ADE has a written hiring policy which includes a "special entrance rate" for salaries above the minimum. (Doc. 83, Ex. 8, Tab A; *see* Doc. 103, Ex. 2, ¶ 9.) Factors used to justify the special entrance rate include the "unusual and outstanding character of the applicant's experience, education and ability as they relate to the specific position" and his or her "earning history." (*Id.*) According to the declaration of Debbie Jackson, head of Human Resources at the time of Plaintiff's hiring, ADE uses salary history as an "objective indicator of the salary a candidate may require to accept employment" and as a means to measure a candidate's experience and expertise. (*Id.*, Ex. 8, ¶¶ 13–14.) Salary history often reflected a candidate's expertise in particular fields, such as agriculture or healthcare, for which ADE paid higher salaries. (*Id.*)

Janet Brite attests that she recommended that ADE hire Plaintiff at a salary of $43,000. (Doc. 83, Ex. 1, ¶ 14.) The recommendation took into account Plaintiff's experience and salary history. (*Id.*) Jackson state that Plaintiff was hired at a special entrance rate of $40,000, plus a 2.5 % performance pay. (*Id.*, Ex. 8, ¶ 18.) This represented an increase of nearly $9,000 over her previous salary of $32,000. (*Id.*; *see* Doc. 83, Ex. 1, ¶ 14.) Plaintiff did not attempt to negotiate a higher salary. (*Id.*, Ex. 8, ¶ 18.)

Brite was involved in ADE's decision to hire Plaintiff's male comparators and other

State Supervisors. She recommended that ADE hire Bruce Watkins to administer programs in Agriculture Education, Welding Technologies, and Community Service Careers at a salary of $56,000, based in part on his salary history, which ranged from $36,000 to $68,000 during his 28-year career with Mesa Public Schools. (Doc. 83, Ex. 1, ¶ 17.) ADE made Watkins an offer of employment at a starting salary of $56,000. (*Id.*)

Brite recommended that ADE hire Jason Wojcik at a salary of $58,500, based in part on his salary history. (*Id.*, ¶ 21.) At the time of his hiring he was earning $58,200. (*Id.*) He had previously earned $100,000 as an Engineering Manager. (*Id.*) ADE offered a salary of $58,500. (*Id.*)

Brite recommended hiring James Wojcik as an Agricultural Education Specialist at a salary of $43,000. (*Id.*, ¶ 33.) ADE initially offered him a starting salary of $43,000. (*Id.*) He put forward a counteroffer of $60,000, which ADE accepted. (*Id.*) He had been earning $85,000 when he applied for the State Supervisor position. (*Id.*)

The same process occurred with respect to female State Supervisors. Brite recommended that ADE hire Stephanie Hahn at $43,000, "which was in line with similar positions." (*Id.*, ¶ 8.) Hahn had been earning $35,200. (*Id.*) ADE offered a starting salary of $40,000, to which Hahn responded with a counteroffer. (*Id.*) She accepted ADE's offer of $43,000 plus 2.5% performance pay, for an adjusted salary of $44,033.75. (*Id.*)

Brite recommended hiring Ruth Kerr at salary of $38,818. (*Id.*, ¶ 10.) ADE offered a starting salary of $39,775, and Kerr responded with a counteroffer of $48,775. (*Id.*) ADE offered Kerr a starting salary of $43,000 plus 2.5% performance pay, for an adjusted salary of $44,033.75. (*Id.*)

Brite recommended hiring Carole Whitlock to administer programs in Health Careers Education at a salary of $56,000, based in part on her salary history. (*Id.*, ¶ 19.) She had been earning $60,000. (*Id.*) ADE made an offer of $51,550. (*Id.*) Whitlock requested a higher salary, and ADE responded with an offer of $56,000. (*Id.*)

- 11 -

Based on this information, the Court finds that Defendant has set forth "an acceptable business reason" for basing wages on prior salary. *Kouba*, 691 F.2d at 876. ADE used an applicant's prior salary both as a basis for formulating a salary offer and as an objective measure of the applicant's experience and expertise in specific fields. ADE reasonably applied salary history in light of its stated purposes.

The burden accordingly shifts to Plaintiff, who must produce evidence sufficient to raise an inference that Defendant's proffered reasons are not legitimate and serve merely as a cover for sex-based discrimination. Plaintiff, citing *Kouba* for the proposition that salary history cannot be used as the sole factor justifying pay disparities, asserts that Defendant relied exclusively on an applicant's earning history when setting salaries, without considering skill, experience, or education. (*See* Doc. 90 at 14–17.) Plaintiff also disputes Defendant's contention that ADE regarded salary history as indicative of a candidate's experience and expertise.

These assertions are unsupported. Contrary to Plaintiff's representation, Billie Belanger, ADE's current head of Human Resources and Defendant's Rule 30(b)(6) designee, testified that "experience, education, salary history and budget" are considered in setting a starting salary. (Doc. 85, Ex. 5 at 87:12–13.) Belanger further explained, "Experience and education are assessed during the hire process at the time of the interviews by the supervisor" while "budget and salary history . . . are more so factored in at the end of the process." (*Id.* at 87:19–23.) When asked by Plaintiff's counsel whether, "It's purely salary history and budget that determine a candidate's—the amount of a starting salary that's offered to a candidate?" Belanger responded, "I don't think that is correct. Experience and education are a factor. Salary history and budget are the final factors." (*Id.* at 88:19–25, 89:1.) Belanger added that the factors are not ranked in importance. (*Id.* at 89:6–7.)

Nothing in the record contradicts Belanger's testimony or suggests that the ADE, in setting a State Supervisor's salary, failed to follow its written policy by using salary history

to the exclusion of other applicable factors. The record clearly shows that the ADE, after taking Brite's recommendations into account, arrived at a salary offer based on an applicant's salary history, experience, and expertise. The record likewise fails to support Plaintiff's speculation that the ADE did not in fact view earnings history as a reflection of a candidate's experience and expertise.

Finally, one week after the Court heard oral argument and took the matter under advisement, Plaintiff filed a so-called "NOTICE re Defendant's Admission Regarding 'Salary History . . .'" (Doc. 110.) Attached to the Notice is an exhibit containing Janet Brite's November 20, 2012, deposition testimony in *Hahn, et al. v. Arizona Department of Education*, 2:12-cv-1299-FJM. (*Id.*, Ex. 1.) Defendant has moved to strike the Notice under LRCiv. 7.2(m)(1). (Doc. 111.) The motion is granted. The Notice, which contains additional argument, is untimely and not permitted under LRCiv. 56(1).

### IV. Conclusion

Plaintiff has failed to make a prima facie showing that the State Supervisor jobs are substantially equal for purposes of the EPA. Specifically, she has not shown that each State Supervisor position requires substantially equal skills as measured by experience, training, and ability.

In addition, Defendant has carried its burden of establishing a legitimate, nondiscriminatory basis for the salary disparities between Plaintiff and her male comparators. Plaintiff has failed to rebut Defendant's affirmative defense with any pretext evidence.

Plaintiff has not established genuine issues of material fact with respect to its prima facie case or its burden of showing pretext.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 82) is granted. Plaintiff's motion for summary judgment (Doc. 84) is denied. The

Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** granting Defendant's motion to strike (Doc. 111).

DATED this 7th day of January, 2013.

Paul G. Rosenblatt
United States District Judge